The State v. Stout.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE STATE OF NEBRASKA, PLAINTIFF IN ERROR, V. WILLIAM H. B. STOUT, DEFENDANT IN ERROR.

1. **Construction of Statutes:** ACTIONS AGAINST THE STATE. Section 1 of the act approved February 14, 1877, entitled " An act to provide in what courts the state may sue and be sued," covers all the various claims and demands on which the state may be sued.

2. ——: ——. The sixth section of the act does not enlarge the classes of claims upon which actions can be brought, but it simply designates those on which actions *may* be brought in the district court of the county in which the capital of the state is located.

3. **On What Claims the State May be Sued.** The state can be sued only on claims that have been first presented to the auditor of public accounts for adjustment, and which have been in whole or in part rejected.

4. **What Claims may be Audited.** The auditor is authorized to audit and adjust only such claims as are " *provided for by law.*" In case of those not so provided for, he is required to make report " to the next legislative assembly," together with such recommendation as he " may deem just."

5. **Actions against the State:** JURISDICTION OF: HOW ACQUIRED. By the act approved February 17, 1877, " To provide for the adjustment of claims against the state treasury, etc.," the right to bring an original action against the state is denied, and the only mode by which the courts can acquire jurisdiction in such cases is by an appeal, as provided in section 2 of said act.

THIS was an action brought in the district court for Lancaster county, on the first day of June, 1877, by W. H. B. Stout against The State of Nebraska, for breaches

of a contract, entered into by the said Stout and the board of prison inspectors on behalf of the state, for the erection of a penitentiary, on land selected and owned by the state. This contract was made June 14, 1870, under the provisions of an act approved in 1870. Gen. Stat., 1032. It required the completion of certain portions of the building on or before the fourteenth day of June, 1871, according to plans and specifications, for the sum of $307,950, payments to be made as follows: " At the end of each and every month after the commencement of said work seventy-five per centum of the work and value of the work done during the then preceding month, to be measured and estimated according to the contract price aforesaid, and after the due completion of said work as herein specified the remainder of said sum of $307,950 remaining due and unpaid."

By provisions of an act approved February 10, 1871 (Laws 1871, p. 78. Gen. Stat., 1043), the time for the erection of the penitentiary, and the contract for building it, was extended to the term of five years from the passage of the act of 1870, and the contractor was allowed to draw " ninety per cent of the value of the work certified to have been done," as it progressed. By a further act of the legislature the time fixed for the building of the penitentiary was extended to March 4, 1877 (Gen. Stat., 1045), and the ten per cent retained by the state, and which had accumulated under the prior acts, was directed to be paid to the contractor.

The first cause of action set forth in the petition was for $4,402.12 interest on the reserve fund of 25 per cent retained by the state under the original contract, and on the reserve of 10 per cent retained by the state under the act of February 10, 1871, from the date of each estimate respectively up to February 26, 1873, the time when, under the act of that date, the accumulations of this reserve fund were directed to be paid to

the contractor; except, that under the act of February 10, 1871, 15 per centum of the reserve fund mentioned in the original contract was paid to the contractor, amounting to the sum of $8,414.35, the interest whereof, up to February 26, 1873, amounting to $1,684.36, was deducted from said sum of $4,402.12, leaving the sum of $2,717.76 alleged to be due the plaintiff.

The second cause of action was for $2,866.06, a like claim of interest on the 10 per cent reserve fund retained by the state from the date of each estimate respectively after the passage of the act of February 26, 1873, up to the completion of the work on the 29th of December, 1876.

The third cause of action was for interest arising in delays of payment, *i. e.* where an estimate was issued and dated and some considerable time elapsed before the warrant in payment thereof was drawn. This amounted, after deducting the sums of $583.94 and $894.13, which had already been allowed and paid by the act of the legislature funding the state indebtedness, to $1,332.68. This cause of action also contained an item of $653.30, alleged to be due as interest on $20,095.58 reserve fund accumulated upon the completion of the work, December 29, 1876.

The fourth cause of action was for $21,025.64, alleged to be due on account of loss suffered by the contractor in selling the warrants issued to him by the state auditor for that much discount from their face, there being no money in the treasury to the credit of the penitentiary fund to pay the same.

The fifth cause of action was for $9,056.25, alleged to be due on account of extra expense incurred by the contractor in employing an overseer of the work, which the plaintiff alleged he would not have been put to if the state had complied with the terms of the contract on its part.

The sixth cause of action was for $7,100, alleged to be due on account of loss and damage accruing to the plaintiff in being obliged, through default of the state, to keep upwards of $12,000 employed in the use of machinery, implements, derricks, etc.

The seventh cause of action was for $13,233.83, alleged to be due on account of broken stone owned by the plaintiff and purchased by the prison inspectors and used by them in rendering the penitentiary grounds fit for occupancy and use.

The eighth and last cause of action was for $177.40, alleged to be due on account of certain cell rock retained by the prison inspectors to be used in the erection of future cells in the penitentiary. ·

The total claim thus alleged to be due was for $57,040.81 and interest on the amounts set up in the seventh and eighth causes of action from December 29, 1876.

There was an answer by the state denying specifically its liability under the several causes of action contained in plaintiff's petition, and setting up a counter claim of $2,300 alleged to be due from the plaintiff on account of convict labor used and employed by him.

By agreement of parties the cause was referred to Paren England, who made a report of the testimony taken by him, his finding of facts and conclusions of law, wherein he found the total amount due the plaintiff to be $41,777.11.

Exceptions to the report of the referee were filed by the Attorney General, and Lamb, Billingsley & Lambertson on behalf of the state, and together with his report were submitted to POUND, J., who found as follows:

1. That the acceptance by the plaintiff of payment, February 23, 1873, of the reserve of the contract price theretofore retained was an acquiescence in the terms of

said act of the legislature extending the time of the performance of said contract and a consent thereto, and that the plaintiff is not in justice and right entitled to claim interest upon the reserve set forth in his second cause of action before the full completion of said building, and from that time, December 29, 1876, till April 26, 1877, the time of payment, amounting to $533.90 only.

2.   That plaintiff, having as aforesaid consented to and acquiesced in the said extension of time, is in justice and right entitled to claim, under his sixth cause of action, for the expense of superintendence of the construction of said building, only from June 14, 1871, to February 23, 1873, the time when the extension of time was made and agreed to, a period of one year, eight months, and nine days, amounting to the sum of $2,033.33.

3.   That upon the eighth cause of action the proof of the purchase of the four cell rocks by the defendant's inspectors is insufficient to sustain said cause of action, except as to one of said cell rocks which the defendant has appropriated and used, and the value of which is found to be $44.35; and that sum only the plaintiff in his eighth cause of action ought to recover.

The report of the referee, except as aforesaid, ought in justice and right to be in all things confirmed and judgment thereon entered.   The plaintiff is entitled in justice and right to recover therefore on his several causes of action as follows:

First cause of action ..................... $733 06
Second cause of action.................... 533 90
Third cause of action.... ............... 1,393 84
Fourth cause of action.................... 19,530 09
Fifth cause of action..................... 2,033 33
Sixth cause of action, no recovery allowed.. ————
Seventh cause of action.................. 10,766 00

Eighth cause of action.....................$     44 35

Amounting to the sum of.............$35,034 57
Less the set-off found due and allowed de-
    fendant ..........................     339 34

Leaving the amount justly due plaintiff....$34,695 23
    Judgment was therefore rendered for the above amount
and costs in favor of plaintiff. To reverse this judg-
ment the state brought the cause up by petition in error.

*T. M. Marquett* (with whom was *Lamb, Billingsley
& Lambertson*) for plaintiff in error.

1. By the act giving jurisdiction to cases like the
one at bar, the proceeding is made the same as in other
cases in law and equity, and what will be error in an
ordinary case, will be error in this. *McBane v. The
People*, 50 Ill., 506. Courts will go beyond the assign-
ment of errors upon the record to take into consideration
the error relating to jurisdiction. *McMahon v. Rauhr*,
47 N. Y., 67. *Lee v. Figg*, 37 Cal., 328. *Levi v. Daniels*,
22 Ohio State, 38. *Columbus R. R. Co. v. Simpson*, 5 Id.,
251. *Evans v. Iles*, 7 Id., 233. *Delafield v. The State*,
2 Hill, 159. *Capron v. Van Noorden*, 2 Cranch, 126.
*Collins v. Sanders*, 46 Mo., 389. *Jones v. Tuller*, 38
Mo., 366. *Way v. Way*, 64 Ill., 406-445. *Moreal v.
Bush*, 46 Cal., 79. *Culver v. Third National Bank*,
64 Ill., 532. *Phillips v. Quick*, 68 Ill., 324.

2. The sixth section of the act of February 14, 1877,
under which this act is brought, is unconstitutional, for
the reason that it gives jurisdiction to the district court
of Lancaster county not given to other district courts of
the same class in the state. *Jefferson Co. v. Jones*, 63
Ill., 531. *People v. Rumsey*, 64 Ill., 44. *Myers v.
People*, 67 Ill., 503. *People v. Mead*, 66 Ill., 135.
*Mitchell v. People*, 70 Ill., 141.

3. The action then must be brought under the first section of the act of February 14, 1877. But under that act to give jurisdiction to the district court, the claimants must first present the claim to the auditor, and it must be by him disallowed, or it must be a claim that has been referred to the court by the legislature; one or the other of these facts must appear before the district court has jurisdiction.

4. The matters stated in the petition do not constitute any cause of action in either equity or law. Freeman on Judgments, 113. *Fithian v. Monks*, 43 Mo., 522. *Simonson v. Blake*, 20 How., Pr., 484. *Weidner v. Rankin*, 26 Ohio State, 522. The petition and findings of the court do not sustain the judgment. *Mitchell v. Milhoan*, 11 Kan., 617.

5. The law under which the contract was made provided a particular mode of obtaining payment of a particular fund, and never became a debt against the state. In legal effect warrants drawn on penitentiary fund are promissory notes, and are payments. Dillon Mun. Corp., 746. *Sharp v. Contra Costra County*, 34 Cal., 284. *People v. Supervisors*, 10 Wend., 363. *People v. Bond*, 10 Cal., 566. *Kingsberry v. Petis Co.*, 48 Mo., 208. *Fairchild v. R. R. Co.*, 15 N. Y., 337. *Clark v. Polk county*, 19 Iowa, 248. *McCauley v. Brooks*, 16 Cal., 27.

6. The defendant in error has received the principal debt in full, and cannot be allowed to maintain a suit for interest. *Robbins v. Cheek*, 32 Ind., 328. *Southern Central R. R. Co. v. Moravia*, 61 Barb., 180. The state never pays interest unless there is an express law for it. Sedgwick Const. Law, 337. *Dodd v. Miller*, 14 Ind., 443.

7. Defendant in error, by accepting the payments made by the state in pursuance of the law making the extension, acquiesced in it and is estopped from deny-

ing the contract as modified. *Bersch v. Sander*, 37 Mo., 104.

8. When the state failed to pay as per agreement, Stout could then do one of two things. *First.* He could abandon the work, then his damages would be the amount the work would be worth at contract price, less the cost of constructing the building. *Grand Rapids and Bay City R. R. Co. v. Van Dusen*, 29 Mich., 444. *Second.* Or he might elect to waive delay. and proceed to perform the work under contract. This he did, and did accept the contract as modified by the state, and did, as he alleges in his petition, proceed to perform his part of it as modified by delay, and has accepted the advantages of the delay, and he cannot now be heard to complain. *McCord v. Westfall R. R. Co.*, 3 La. Ann., 285. *Nelson v. Plimpton Fire Proof E. Co.*, 55 N. Y., 484. *Holmes v. Wilhite*, 3 Neb., 147.

9. The fourth cause of action amounts to this and nothing more—that defendant in error, after the estimates were made, and after he had accepted the warrants drawn on the penitentiary fund for the same, sold them for less than their face, and now claims the amount of discount. The plaintiff was to receive his payment by a warrant drawn on the penitentiary fund. The law makes this payment. But if it did not, the acceptance by the defendant and payment, would be payment in full. *Lake v. Trustees*, 4 Denio, 520. If it be true that defendant in error has a claim against the state because he sold the warrants below par, then, with few exceptions, everybody that ever sold a state warrant in Nebraska would have a claim on the state; on the same principle, every person that ever sold a county warrant below par would have a claim against the county. And every person that ever sold a promissory note of any person below par would have an action against that person for the difference. This would be, in effect, grant-

The State v. Stout.

ing extra compensation to the contractor after the contract had been entered into. *Foster v. Coleman*, 10 Cal., 278. And this would be unconstitutional. Const., Sec. 24, Art. II.

10. But it is claimed that the defendant need not have a case which is upheld by law. That though by the law of the land he has no case, yet the judge is to render a judgment as right and justice may require. See Sec. 4 of act of February 14, 1877. Right, when applied to claims due from one person to another, means, Bouvier says, " A well founded claim." Right, Webster defines as being "lawful." Another definition— " Conformity to human laws; when applied to law suits, it means that the judge shall decide according to law and justice."

11. The plain old right and justice, as administered by our courts, is what the defendant is entitled to. Nothing more; nothing less.

*J. R. Webster and L. C. Burr* (with whom was *O. P. Mason*) for defendant in error.

1. Section 6 of the act under consideration is not unconstitutional. The state may adopt any mode, or appoint any board, or tribunal, or court, and establish such rule as it may deem advisable for the settlement and liquidation of claims against it. It will not be denied but that the legislature might have allowed and authorized the payment of the claim of the defendant in error, and that such action on the part of the legislature would be binding upon the state. They, the legislature of the state, had jurisdiction and control of the whole subject matter. They might allow or reject the claim; they might refer the same to the courts for determination; they might appoint or designate a particular person to whom it should be referred for determina-

tion; they might, and did, in the act, authorize the district court to pass upon this claim as well as all others, establish and prescribe rules by which the court should be guided in this determination. These were according to equity and right. It will not be denied but the legislature of the state might refer this claim, or claims of like character as this, to the district court of Lancaster county for determination; and if the legislature might so refer each claim to that court *seriatim* when presented to it, can counsel give a reason why it might not in anticipation fix the county of Lancaster, where the records and archives of the state and its officers and seat of government are, as the venue for actions against the state?

2.   It is incompatible with the honor and dignity of government that grievances committed by the public should be determined merely upon principles of strict legal liability.   They should be redressed upon broad principles of natural equity.   1 Blackstone, 243, and citations.   Cooley on Taxation, 481.   And the legislature may compel the recognition of mere equitable obligations where no legal obligation exists, and local auditing officers may recognize and pay such obligation. Cooley on Taxation, 88-91.   *Friend v. Gilbert*, 108 Mass., 408.   *Brewster v. Syracuse.* 19 N. Y., 116.   *Guilford v. Supervisors*, 13 N. Y., 143, 149.

3.   The controversy is to be decided " *according to justice and right as upon the amicable settlement of a controversy*, and the award and judgment is to be rendered as, upon the testimony, right and justice may require."   In determining the construction to be put upon this statute, the whole statute ought to be so construed that all its provisions may be harmonized.   Sec. 4, act of February 4, 1877.   *Scott v. State*, 22 Ark., 369.   *Davey v. B. & M. R. R. Co.*, 31 Iowa, 553. And incongruities, if any there be, are to be so construed

as to harmonize with the general intent of the whole. *Commonwealth v. Conyngham*, 66 Penn. St., 99. *State v. Button*, 25 Wis., 109. The form of expression "justice and right," carefully avoiding words of technical meaning like law and equity, familiar alike to legislators, lawyers, and judges, itself suggests a disregard of technicality, and that rule of precedent that might control in like case where the status of the parties at the inception of the wrong complained of were on a standing of equal advantage before courts. And this form of expression, coupled with the words " *award* " and " *amicable settlement of the controversy*," make it evident that the form of expression was not accidental, but that the words were carefully selected because they expressed the sense of the legislature that public controversies should be decided upon the principles indicated and approved by the foregoing authorities.

4. Adjudicated upon these principles, does the petition state facts constituting a cause of action? Had the parties stood upon an equality before the courts, the contractor, on the first default, could have rescinded and sued for damages, and for the whole amount of the work done, but this, the state, shielding herself behind the ægis of sovereign power, did not allow. Upon what ground could the state refuse payment for all work done? *Only that a contract provided* that a reserve should be retained. *But that contract the state first violated.* Had the state not then shielded herself behind the screen of sovereignty, giving her immunity from legal process, the contractor could at once have rescinded the contract and have sued for *the whole amount* of the work done. He could have recovered at once the reserve per centum of the work, and damages also for breach of the contract. But rescission was impossible, for the state permitted no suit to be brought against her. His money was expended, his capital jeopardized, and

he was compelled to, proceed.  He could not rescind.
But was not the state in justice and right morally bound
to pay interest for the money of the contractor that she
thenceforward retained from him, and had and enjoyed,
and prevented him by her power and cloak of sovereign-
immunity from enjoying?  We think so.  It is, there-
fore, insisted that the contractor should be paid interest
on all the reserve for all the time it was withheld, as
well as for interest arising from delays of payment.

5.  Discounts.  Of this cause of action it is not
claimed that the facts would make a cause of action be-
tween private parties standing in equality before the
law, where the injured party could rescind and enforce his
rights by action.  No such relation existed.  The state,
until the commencement of this action, held herself se-
curely shielded behind her sovereignty, beyond the reach
of legal process.  The contractor, crushed by the burden
of his embarrassments, was compelled to sell, and did
sell, the dishonored paper of the state, given him—forced
upon him—as payment of his right and just claims,
under a contract calling for money payment, and made
at a time when apparent sales of its lands then in actual
progress were fair upon their face and promised to real-
ize a fund in money for his payment; and in faith of
payment in money the state and the contractor, of five
competing bidders the lowest, entered into contract.

The prices the contractor realized for his paper, forced
upon him in lieu, of money due under the contract,
varied from 77 to 96½ per centum of its face, and for
long portions of the time and great portion of the value
of the work was but 80, 85, 89, and 90 cents.  Under the
principles of adjudication established by the act under
which this suit is brought, and supported, and conceded
by the authorities cited under that head, do justice and
right dictate that the state should refuse to reimburse
him?  Or rather, do not justice and good faith require

that the state should reimburse? On breach of the contract and dishonor of the paper he could not be released of his contract. He could not tender back the unpaid warrant to the auditor, and demand faithful performance by the state. What is his damage—his just and rightful indemnity? The difference between the value and face of the paper—between the value paid and the amount agreed to be paid. This, so far as proven and found by the court, was $19,530.00.

6. Plaintiff in error has released errors in the proceedings by obtaining the benefit of the stay under the provisions of § 12, and no case can be found where the state is exempt from the consequences of its *own affirmative* and *voluntary act* in the conduct of a cause in court, or from the operation of the rules of practice in court in causes to which it is a party, and the consequences of doing any affirmative act, which consequences are forced by general statute. When Auditor Weston filed the certificate claiming a stay of the judgment, he elected, on behalf of the state, to take a stay rather than error or appeal.

LAKE, J.

The conclusion to which we have come in this case renders it quite unnecessary for us to notice many of the questions discussed so ably, and at length, by the respective counsel. The action in the court below was brought under the provisions of the act of February 14th, 1877, entitled "An act to provide in what courts the state may sue and be sued." The duty of enacting a law upon this subject was enjoined upon the legislature by section 22, Art. VI, of our present constitution, which declares that: "The state may sue and be sued, and the legislature shall provide by law in what manner and in what courts suits shall be brought."

Recognizing the fact that this section of the constitution required legislative action before the state could be properly sued, the act in question was passed, the first section of which provides in what courts, and upon what particular demands, actions against the state may be brought, as follows:

" Sec. 1. That the several district courts of the judicial districts of the state as now provided for and established by the constitution of the state, and of such judicial districts as may hereafter be provided by law, shall have jurisdiction to hear and determine the following matters:

" *First.* All claims against the state filed therein, which have previously been presented to the auditor of public accounts, and have been in whole or in part rejected or disallowed.

" *Second.* All claims or petitions for relief that may be presented to the legislature, and which may be by any law, or by any rule or resolution of the legislature, or either house thereof, referred to either of said courts for adjudication.

" *Third.* Of all set-offs, counter-claims, claims for damages, liquidated or unliquidated, on the part of the state against any person making a claim against the state, or against the person in whose favor such claim arose."

This section designates, and includes all the various claims and demands on which the state may be sued, and also the courts in which actions thereon may be brought. From the language employed it is clear that jurisdiction in these matters is conferred upon all the district courts alike in which such suits may be instituted, no distinction whatever being made.

It was suggested in argument that the sixth section confers a separate and enlarged jurisdiction upon the district court for the county in which the capital of the state is located, but we think otherwise. By the first clause of this section it is enacted, that: " The state may

be sued in the district court of the county wherein the capital is situate, in any matter founded upon, or growing out of a contract, express or implied, originally authorized or subsequently ratified by the legislature, or founded upon any law of the state." This simply designates certain claims on which actions *may* be brought in that court, and it may be observed that it covers every claim that can possibly fall within the *first* class mentioned in section one—the class to which it is said the claims now under consideration belong. It is scarcely possible to imagine a claim, within the design of this act, that would not necessarily be founded either upon a contract, express or implied, or upon some law of the state. Indeed, we think that all of the claims embraced in the *first* class mentioned in section one, and which, to give the court jurisdiction over them, must be first presented to the auditor of public accounts and by him rejected, either in whole or in part, are very clearly covered by the clause just quoted from section six. Therefore, to hold that the sixth section was intended to give a jurisdiction independent of that conferred by section one, by authorizing actions to be brought on claims without first procuring the action of the auditor thereon, it would follow, necessarily, that the first section, to the extent that it contemplates action by the auditor of public accounts, would be entirely nugatory, and the holder of any claim upon the state, if so disposed, could at once sue, and obtain judgment thereon. He could do this even although the auditor had the authority, and stood ready to audit the claim, and draw his warrant upon the treasurer for the full amount due. Surely such a result could not have been contemplated in the passage of this act. In order, therefore, to give due effect to each of these sections, we conclude that in no case can an action be maintained against the state, unless the claim on which it is brought

be first presented to the auditor of public accounts for adjustment, and by him rejected, in whole or in part. And the petition should contain an allegation to this effect. It may be proper here to say, however, that, as we shall hereafter show, this authority of the auditor in the *allowance* of accounts is somewhat modified by subsequent legislation requiring the approval of the secretary of state.

But there is another fact that must not be lost sight of in this connection. In passing this act the legislature evidently had in mind the existing statutes relating to the audit of claims against the state, which being *in pari materia*, must also be considered in order to give to it a proper construction. By the light of these existing statutes it is clear that it is not every possible claim that may arise that the auditor is authorized to audit or adjust. In this particular his duties are very clearly defined, and a bound is set beyond which he cannot go. By the first clause of section 4, chapter IV, Revised Statutes, 1866, it is made the duty of the auditor: " To audit, adjust, and settle all claims for services rendered, or expenditures made for the benefit of the state, *provided such services are rendered, or expenditures made, by authority of law*, except only such claims as may be expressly required by law to be audited and settled by other officers and persons." Gen. Stat., 1012. Under this provision it is manifest that no claim could be settled by the auditor that was not " provided for by law," and should he assume to act in any matter not falling within the authority here given, in disregard of this limitation, such action would be clearly void, conferring no right whatever upon the holder of the claim as against the state.

But recognizing the fact that possibly claims might arise, not anticipated and provided for by the legislature, it was enacted by section nine, of the same chapter, that

" in case of claims, the adjustment and payment of which are not provided for by law, no warrant shall be drawn by the auditor, or countersigned, or paid by the state treasurer, but all such claims shall be reported to the next legislative assembly, with such recommendation as the auditor may deem just." Gen. Stat., 1014. The legislature thereby reserving to itself the right of making such disposition of claims of this sort as the circumstances of each particular case might seem to require. And there is nothing in the legislation of 1877 which in the least degree changes or modifies the law as it then was respecting the adjustment of this class of claims. Their recognition and payment now, as formerly, rest solely upon the discretion and sense of justice of the legislature.

This being our opinion of the effect to be given to the several provisions of the statute bearing on the case, how stand the claims which are the subject of this controversy? In the first place, we might say that inasmuch as there is no allegation in the petition that these claims had been presented to the auditor of public accounts, and by him rejected, either in whole or in part, a cause of action is not set forth. But this is a matter of pleading merely, not reaching the root of the difficulty, to which we prefer to go. In our opinion, had this allegation been made it would have been all the same, the radical defect resting in the character of the claims themselves. It was not claimed on the argument of the case, nor do we think it can be, with the least show of reason, that any one of the alleged causes of action were proper for the auditor to have allowed. Indeed, after a most careful examination, we are quite satisfied that there was no law by which he could have justified his conduct had he assumed to pass upon them with a view to their adjustment. The claims all, either directly or indirectly, grow out of the contract between the state and the defendant

in error for the building of the state penitentiary, and his work under it, and by the laws under which this work was done, the adjustment of all demands, for which the state could possibly be made justly liable, was given to the board of prison inspectors, in whose sole charge the whole business was placed.    The auditor had no voice whatever in the matter of ascertaining what was due to the contractor, but he was simply required, from time to time, to draw warrants upon the proper fund in his favor for such amounts as the inspectors certified was due, less the percentage which the state had stipulated to retain until the completion of the work. The claims not being such as the auditor could take cognizance of, it follows that, under our construction of the act of February 14th, 1877, no authority was given to bring the action, and that consequently the district court was without jurisdiction to adjudge upon their validity.

In our discussion of the case thus far, we have proceeded upon the theory that, upon claims which the auditor could adjust and settle, original actions might be brought thereon in case of their total or partial rejection. And if we look alone to the act of February 14th, under which this proceeding was instituted, this theory is doubtless the true one.    But we are of the opinion that, by a subsequent act, "To provide for the adjustment of claims upon the state treasury," etc., approved February 17th, 1877, the right to bring an original action against the state is denied, and that the only mode of procedure by which the court can acquire jurisdiction is by an appeal from the decision of the auditor and secretary of state, whose joint action is now required in the approval of claims.    It is provided in the second section of this act that: " Such appeal may be taken in the manner provided by law in relation to appeals from county courts to such district courts, and shall be prosecuted to effect as in such cases. *Provided, however*, that the party taking

such appeal shall give bond to the state of Nebraska in the sum of two hundred dollars, with sufficient surety, to be approved by the clerk of the court to which such appeal may be taken, conditioned to pay all costs which may accrue to the auditor of public accounts by reason of taking such appeal. No other bonds shall be required." And in the following section it is further provided that: "If either party feel aggrieved by said judgment (of the district court), the same may be reviewed in the supreme court as in other cases."

Thus there is provided a cheap, simple, and very convenient method of obtaining a review in the courts of the decisions made by the officers specially appointed to audit and adjust these claims in the first instance, if the claimant be dissatisfied. And, under the rule laid down by this court under a similar statute respecting the adjustment of claims against counties, it would seem to be the only mode by which the finding of these officers can be reviewed. But, as if to place this matter beyond all question, the fourth section provides that: "No claim which has been once presented to such auditor and secretary of state, and has been disallowed, in whole or in part, shall ever be again presented to such officers, or in any manner acted upon by them, *but shall be forever barred, unless an appeal shall have been taken, as provided in section two of this act.*"

In view of the several statutes to which we have called attention, we must hold: *First.* That no action can be maintained against the state upon any claim that is not first presented to the auditor of public accounts for audit, as the statute requires, and which has been rejected in whole or in part. *Second.* And that the only mode by which the courts can obtain jurisdiction of such claim is by an appeal, as provided in section two of the act approved February 14th, 1877.

For these reasons the judgment of the district court

is reversed, and the case dismissed at the cost of the defendant in error.

JUDGMENT ACCORDINGLY.