BARNEY McSHANE, APPELLEE, V. CORNELIUS MURRAY ET AL., APPELLANTS.

FILED JULY 7, 1921. No. 21682.

1. **States: ACTION: WAIVER.** Where by its Constitution the state is immune from suits against it except as the legislature otherwise provides, the immunity thus provided cannot be waived by a voluntary general appearance in the case and a participation in the trial thereof upon its merits by the attorney general in an unauthorized action brought against the state.

2. ————: UNAUTHORIZED ACTIONS. A decree rendered against the state under the circumstances above stated is void as against the state, and upon appeal to this court will be vacated and set aside in so far as the same seeks to bind the state.

3. **Dismissal and Nonsuit.** Such dismissal of the state from the litigation, however, does not affect the action against other defendants against whom the plaintiff had a right to maintain a suit.

McShane v. Murray.

4. **Boundaries**: ESTABLISHMENT: SUFFICIENCY OF EVIDENCE. In a dispute arising between plaintiff and defendants as to the true boundary line between their adjoining lands, the sole question depended upon the genuineness of a certain alleged original government quarter corner. The trial court found for the plaintiff and established the corner as contended for by the plaintiff. Evidence examined, and *held* to support the decree of the lower court.

APPEAL from the district court for Sheridan county: WILLIAM H. WESTOVER, JUDGE. *Affirmed in part, and reversed in part.*

*Clarence A. Davis, Attorney General,* and *Mason Wheeler,* for appellants.

*J. E. Gilmore* and *J. H. Edmunds, contra.*

Heard before MORRISSEY, C.J., ALDRICH, FLANSBURG and ROSE, JJ., DICKSON and TROUP, District Judges.

TROUP, District Judge.

This is a suit for an injunction. Plaintiff is the owner and in possession of the southeast quarter of section 25, township 32, range 46, and defendant, Cornelius Murray, is the lessee and in possession of the north half of section 36, same township and range, and all in Sheridan county, Nebraska; the latter description being a part of the school land owned and leased by the state of Nebraska and coming to the defendants Murray in 1911 through mesne assignments of the lease, and lying immediately south of said section 25.

A dispute having arisen between the plaintiff and defendant Murray as to the location of the true boundary line between the two sections, and plaintiff claiming that the defendants were undertaking to enter upon and cultivate a portion of the land lying within the disputed tract, but which plaintiff alleges belongs to him, he instituted this action in April, 1917, to enjoin the defendants from so doing. Upon presenting plaintiff's petition to the judge of the district court for Sheridan county, a restraining order was issued against the defendants ac-

cordingly, and the same remained in force and effect until the final decree in June, 1920.

At the commencement of the action, Cornelius Murray and John Murray, only, were made defendants. A year thereafter, however, but without leave of court to make additional parties defendant or to issue summons therefor, a summons was issued against and served upon the state of Nebraska, commanding it to answer it in the usual time thereafter.

None of the defendants having answered, on February 5, 1920, the court entered an order requiring all defendants to answer the petition of the plaintiff on or before March 8, 1920. Without interposing any objection to the action thus taken by the plaintiff in seeking to bring the state into the litigation, on February 20, 1920, the state filed its answer, setting out the fact that the state was the owner of the land referred to in section 36; that it had leased the same to its codefendants herein and put them in possession thereof; that it had theretofore caused said land to be surveyed, and that the disputed tract falls within the boundaries of section 36, and asked that plaintiff's action be dismissed. At about the same time the defendants Murray filed their joint answer, in which they set forth substantially the same facts as contained in the answer of the state. The plaintiff replying denied all new matters set forth in the respective answers.

A trial was had to the court, and on June 17, 1920, a final decree was rendered by the court, finding generally for the plaintiff and against all the defendants; found the boundary line between the two sections to be as claimed by the plaintiff; found the corner designated in the evidence as the "McShane" corner to be the location of the original government quarter corner, and established the same as such by the decree, and made the restraining order theretofore granted a perpetual injunction. The defendants appeal.

The appellants first contend that the plaintiff has no lawful right or authority to sue the state in an action like

McShane v. Murray.

the present one and was without authority or legal right to make it a party to the litigation, and cites authorities in support thereof. We are constrained to hold that the position of the state on this point is well taken and must be sustained. Section 22, art. VI, of the Constitution of Nebraska, provides: "The state may sue and be sued, and the legislature shall provide by law in what manner and in what courts suits shall be brought." Under this provision, of course, no action can be brought against the state unless and until the legislature has so provided. The legislature of the state has acted in pursuance of this provision of the Constitution and has specified certain classes of actions which may be brought against the state. Rev. St. 1913, sec. 1177. In the case of *State v. Stout*, 7 Neb. 89, this court held that the section of the statute above referred to "covers all the various claims and demands on which the state may be sued." See, also, *State v. Mortensen*, 69 Neb. 376. It is quite evident that the action at bar is not one within any of the classes mentioned in said section of the statute, and we are not cited to, nor are we aware of, any other provision enacted by the legislature since, which would authorize the maintenance of an action in the nature of the one at bar against the state. Indeed, judging from the entire silence of plaintiff's brief on the subject, we assume that plaintiff is not resisting this claim made on the part of the state. Of course, if the plaintiff had no authority or legal right to make the state a party to this action or maintain this suit against it, the voluntary appearance by the attorney general in behalf of the state and his failure to object to the jurisdiction of the court over the state did not, and could not, in any wise bind the state so as to make the decree rendered against it of any validity. The exception of defendants in the particular stated is therefore sustained, and so much of the decree of the lower court as purports to adjudicate the matters in suit against the state is vacated and set aside and the action as against the state dismissed.

However, a dismissal of the state from the litigation does not affect the action as to the other defendants. The plaintiff would still have the right of action against them personally to restrain them from taking possession of premises already in the possession of plaintiff. And this brings us to a consideration of the case upon its merits.

In 1882 a government survey was made of the two sections involved in this controversy and adjacent sections, at which time the section corners and some, perhaps all, of the quarter section corners were located and marked. This dispute as to the location of the true boundary line having arisen, the defendants Murray, in the year 1914, applied to the state commissioner of public lands and buildings to have the correctness of the former survey of section 36 tested, in pursuance of the provisions of sections 5563, 5564, and 5566, Rev. St. 1913. In pursuance of the authority conferred by these provisions of the statute, the commissioner of public lands and buildings delegated one E. C. Simmons, then deputy state surveyer, to make a retracement survey of these lands with a view of definitely establishing the boundary line between the two sections. In March, 1914, Simmons made a retracement survey and filed his report thereof accompanied by a blue-print or diagram of the premises, a copy of which, with the various notations thereon, being attached to the record herein. The chief and about the only point of contention now is which one of the two points shown upon this plat is the original government quarter corner, that marked by the red letter "A" and designated in the evidence as the "McShane" corner, or the one marked by the red letter "B" and designated in the evidence as the "Simmons" corner. As before stated, the court found the "McShane" corner to be the true one and so decreed. Deputy state surveyor Simmons in his retracement survey in 1914 rejected the McShane corner as not being an original government quarter corner, and established what he claimed should be the original government quarter corner

at "B" or Simmons corner.    The statute above referred
to (section 5564) provides that, when such survey shall
have been made and properly approved, filed and re-
corded, it "shall be *prima facie* evidence of the correct-
ness thereof." Is the *prima facie* case thus made, to-
gether with such other testimony introduced tending to
support it, overcome by direct and positive evidence
against its correctness? We think it is.

The plaintiff testified that in the year 1885 (three years
after the original survey was made) he, with other mem-
bers of the McShane family, first went into possession of
the southeast quarter of section 25 as homesteaders and
has occupied it ever since; that sometime in July, 1885,
he first discovered the now so-called "McShane" corner,
has been familiar with it ever since, and described it as
consisting of two pits and a mound, just the same as all
the other government corners and corresponding in line
with other government corners to the west; that they
built their house about 20 or 30 rods north of this quarter
corner; that a number of years later one Ball, the then
county surveyor of Sheridan county, was engaged by
them to do some surveying in that vicinity, and at that
time they had him build up this corner a little more and
dug out the pits to do it with, and that Ball at that time
put a brick in the mound, but, with this exception, left it
just the same as it was before and as it has been since.
John McShane, brother of the plaintiff, corroborated the
plaintiff in his evidence in all material respects.

Witness Sage testified that in the year 1887 he leased
the school section in question for a horse pasture, and, in
endeavoring to locate its boundaries in company with the
plaintiff, the plaintiff at that time showed him the quar-
ter corner now called the "McShane" corner, that he
examined it and took it to be a government corner, but
because it was a short section he abandoned the lease.

Witness Linden testified that his homestead was just
east of the school section, where he had lived since 1884;
that he was acquainted with the boundary lines and sec-

tion corners in that vicinity; that he first saw what is called the "McShane" quarter corner in 1885, and that it looked to him like all the rest of the quarter corners around there, and was in line with the rest of the corners to the west, but not with those to the east.

Surveyor Simmons, called in behalf of the defendants, testified that he had been surveyor and civil engineer since 1875 and had done a great deal of retracement of old lines; that he had made the retracement of the boundary line of section 36 in this case; that, after locating the four original government section corners, he went to and examined the corner now called the "McShane" quarter corner, which he said seemed to have been recently built, and had two large pits and a mound with a brick in it, which he said compared with other corners established by former county surveyors, and that the government did not use bricks in establishing its corners. Upon being asked: "Did the physical marking of the McShane corner differ in any other way from the markings of government corners?" he answered: "I don't know as it does, I don't recall any special features." Being of the opinion that the quarter corner called the "McShane" corner, marked "A" on the plat, was not the original government corner, Simmons rejected it and located the quarter corner at the point marked "B" on the plat and called the "Simmons" corner.

Witness McCarthy testified that he had been a surveyor since 1868, and is the present county surveyor of Sheridan county; is familiar with the corners of section 36; first saw the McShane corner about ten years ago; consisted of two pits and a mound with a brick in it; pits were large and were in northeast and southwest direction, and, after making some measurements respecting it, thought something peculiar about it and could not give it credit for being the original corner.

Cornelius Murray, one of the defendants, testified that he had lived in Sheridan county for 35 years, and on section 36 since 1911; is familiar with the government

McShane v. Murray.

corners of 36; first saw the McShane corner about 1900; in June, 1885, he 'and the plaintiff herein, having located the northeast government corner of 36, secured a surveyor's chain and chained pretty straight west for half a mile to locate the quarter corner, but could not find it, although they hunted all around, and is positive it was not there in June of that year.

Three other witnesses testified on behalf of the defendants. One who had lived in the vicinity since 1884 said he first saw the McShane corner in 1890, but could not say it was not there before. Another who lived in the neighborhood since 1905 said he first saw it about ten years ago. Another who had lived in the vicinity since 1887 first saw the McShane corner sometime in the nineties. This closes the testimony on the subject except a few field notes which will be referred to presently.

Of course, the testimony of these witnesses who say they did not see the McShane corner until a greater or less number of years after 1885, but who had never endeavored to see it and had no interest in its discovery or location, avails little or nothing as against the positive evidence of persons who actually did see it in 1885 and have been familiar with its existence ever since that time. So it seems to us that we are compelled either to find that the four witnesses—the plaintiff, his brother, Sage, and Linden—swore falsely, or accept as a fact conclusively established that the McShane corner, such as it was, was in existence at the point claimed by the plaintiff as early as 1885 at least. If so, what proved fact or even suspicion under the evidence justifies a finding that said corner is not a genuine government corner? The defendants have introduced certain field notes of the 1882 survey which they claim are in corroboration of their theory. It is doubtful whether in this case recourse may be had to the field notes to contradict the genuineness of the McShane corner as established by the evidence. The case of the *State v. Ball,* 90 Neb. 307, seems to announce the correct rule in this respect:

"Monuments erected by the government surveyor to mark the section corners according to his survey will control, although in conflict with his field notes. If the monuments have been obliterated, but their location can be ascertained from a consideration of the testimony of witnesses who know and testify to the fact, the site thus established will control. If the monuments have been destroyed and their original location cannot be established by other proof, recourse may be had to the field notes of the original survey."

The McShane corner was discovered in the summer of 1885, but three years after the original survey, and at the time when and by the first settlers who went upon that land and all described it as looking like all the other government corners. It has never been obliterated or destroyed, but has been a known corner ever since. Under the rule above stated it would seem that the field notes cannot be permitted to displace a fixed corner thus established. Besides, the field notes are not corroborated by the discovery of a monument of any character, pits, mounds, sandstone or anything else in the vicinity of the so-called "Simmons" corner, although no doubt diligent search has been made for the same. It is true that the line connecting the McShane corner with the northwest and northeast corners of the section is not a straight line, and that, to our minds, is the strongest evidence against the genuineness of the McShane corner, but neither will courses and distances be allowed to prevail over original government corners convincingly established by evidence. We have much respect for the opinions of the witnesses Simmons and McCarthy as practical and experienced surveyors and believe they honestly entertain a doubt that the so-called McShane corner is the true original government corner, but we think the evidence does not support such doubt. We think the decree of the lower court, as to the defendants other than the state, was right and should be affirmed.

As before stated, so much of the decree of the lower

court as purports to adjudicate the matters in suit against the state of Nebraska is vacated and set aside and the action as against the state dismissed. As to the other defendants, the decree is affirmed.

JUDGMENT ACCORDINGLY.