RAY A. LOWER v. STATE OF NEBRASKA.

FILED JULY 20, 1921.   No. 21780.

1.  **Information**: SIGNATURE. Under the provisions of chapter 205,
    Laws 1919, an assistant attorney general has no authority to
    make and sign an information in his own name, and an informa-
    tion so signed is a nullity.

2.  **Attorney General**: ASSISTANT. The assistant attorney general is

Lower v. State.

the agent of the attorney general, and not an independent officer, and his official acts must be performed in the name of his principal.

ERROR to the district court for Saunders county: ED-WARD E. GOOD, JUDGE. *Reversed, with directions.*

*Jamieson, O'Sullivan & Southard* and *Slama & Donato,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *C. L. Dort,* contra.

Heard before MORRISSEY, C.J., DAY, DEAN, LETTON and ROSE, JJ.

DAY, J.

Ray A. Lower was convicted of a felony in the district court for Saunders county, and sentenced to the penitentiary under the provisions of the indeterminate sentence law. As plaintiff in error he has brought the record of his conviction here for review.

A number of errors are assigned, and argued in his brief; but, in the view we have taken of the case, only one need be considered.

It is first argued that the information is insufficient to charge an offense, particularly so, because the same was not made and signed by a proper prosecuting officer authorized by law so to do. The information was made and signed by "Cecil F. Laverty, assistant attorney general for the state of Nebraska," and the question is squarely presented whether the assistant attorney general of the state has legal authority to make and sign an information in his own name.

It is the policy of the law, as expressed in article I, sec. 10 of our Constitution, that no person shall be held to answer for a criminal offense (except in certain cases named), unless on a presentment or indictment by a grand jury. A proviso is made in the Constitution "that the legislature may by law provide for holding persons answerable for criminal offenses, on information of a

public prosecutor." Acting under this power the legislature of 1885 made provision for prosecuting criminal offenses by information, and, among other provisions, enacted section 9063, Rev. St. 1913, which was amended by chapter 164, Laws 1915, and reads as follows: "All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant; he shall subscribe his name thereto, and indorse thereon the names of the witnesses known to him at the time of filing the same." The term "prosecuting attorney" and "county attorney" signify the same. Rev. St. 1913, sec. 8904. The legislature, by chapter 205, Laws 1919, constituted a department of justice, and placed the attorney general as head thereof. By the terms of the act the general control and supervision of all actions and legal proceedings in which the state of Nebraska is a party or interested, and the control of all of the legal business of all of the departments and bureaus of the state, or of any office thereof which requires the services of an attorney in order to protect the interest of the state, is given to the attorney general. Section 3 of the act provides: "The attorney general is hereby authorized to appear for the state and prosecute and defend in any court or before any officer, board, or tribunal, any cause or matter, civil or criminal, in which the state may be a party or interested."

Section 4 provides: "The attorney general and the department of justice shall have the same powers and prerogatives in each of the several counties of the state as the county attorneys have in their respective counties."

Section 6 provides: "The attorney general shall have power to appoint a deputy attorney general, and such regular and special assistants as he may deem necessary. The deputy attorney general shall give bond to the state of Nebraska in the sum of ten thousand dollars with good and sufficient sureties to be approved by the governor, which bond together with a copy of his appointment shall be deposited in the office of the secretary of state. The

deputy may do and perform in the absence of the attorney general all the acts and duties that may be authorized and required of the attorney general. The attorney general shall be responsible for the acts of his deputy."

An examination of the foregoing sections clearly indicates that it was the intention of the legislature to clothe the attorney general with power to prosecute criminal actions in any county in the state, and, as a necessary incident, the power to make complaints, to make, sign, and file informations, and in fact to exercise any power in each of the several counties of the state as is given to the county attorneys in their respective counties. It is also clear that the deputy is authorized, in the absence of the attorney general, to do and perform any act which the attorney general is authorized to perform. It will be noted, however, that while the legislature has made provision for the giving of bond by the deputy attorney general, and has prescribed that he may exercise all the acts and duties of the attorney general, in the absence of the latter, it has not attempted to define or prescribe the powers and duties of the assistants. The only reference to the "assistants" is that the attorney general is given power to appoint "such regular and special assistants as he may deem necessary." If by this act it was the intention of the legislature to authorize the assistants to do and perform such acts as the attorney general is authorized to do, as independent officers, it seems strange that it did not say so, especially in view of the fact that the powers of the deputy are set out in the same section of the act in which the authority to appoint assistants is given.

In Mechem, Public Officers, sec. 584, the rule is stated as follows: "The question in whose name a deputy officer should act is one of much importance and of considerable apparent uncertainty. * * * In several of the states the authority to act in an official capacity is given to the principal alone, or, if the appointment of deputies is recognized or authorized by law, they are regarded as the

mere private agents or servants of the principal and not as independent public officers deriving independent authority from the law. Where such is the case, the authority exercised by the deputy is, manifestly, a derivative and subsidiary one—it is the authority conferred upon the principal, and not an authority inherent in the deputy. It follows then, logically and legally, that the authority should be exercised in the name of him in whom it exists and not in his name who of himself has no recognized authority at all. The execution should, therefore, be in the name of the principal alone or in the name of the principal by the deputy.

"In other states, as has been seen, the deputy is recognized as an independent public officer and is endowed by law with authority to do any act which his principal might do. In these cases where the authority exists in the deputy himself by operation of law and is not derived solely through the principal, it is well executed in the name of him in whom it exists, the deputy himself.

"Under either state of facts, the authority of a special deputy, who, as has been seen, is regarded as the mere private agent or servant of the principal, would, unless otherwise provided by statute, be properly exercised in the name of the principal."

An officer, in whom the official discretion and powers of the office are vested, may, when authorized by law, perform the functions of his office through the services of assistants, acting under his direction and supervision, but he cannot delegate to them, where such assistants are not by law given the authority, the power to perform his official duties independently of any control or direction by him, and according to their own individual judgment and discretion. 18 C. J. 1346, sec. 88. An assistant is one who stands by and aids or helps another in the performance of the latter's duties. *State v. Longfellow*, 95 Mo. App. 660. And, unless there is a clear expression in the statute to the contrary, it will be presumed that the legislature intended that public duties, which require the

exercise of discretion, should be performed by the public officers themselves, and not by their assistants. *Commonwealth v. Smith,* 141 Mass. 135.

It was said in *McGarrah v. State,* 10 Okla. Cr. 21: "There are many reasons why a power of this kind should be confined to the prosecuting officer. He is expected to be impartial in abstaining from prosecuting, as well as prosecuting, and to guard the real interests of public justice in favor of all concerned. It is therefore of the highest importance to the public that this power should be carefully exercised, and that the responsibility should rest upon the officer to whom it is confided."

And, in *Engle v. Chipman,* 51 Mich. 524, the court said: "The prosecuting officer is a very responsible officer, selected by the people and vested with personal discretion intrusted to him as a minister of justice, and not as a mere legal attorney. * * * This discretion is official and personal, and our laws have only allowed its delegation on special grounds, where an assistant has been provided for by carefully guarded legislation. It is directly contrary to public policy to allow any general delegation of a prosecutor's powers, and the courts cannot recognize any such arrangement as forming a basis for personal compensation."

It has been pointed out that section 4 of the act (Laws 1919, ch. 205) provides that the "attorney general and the department of justice" shall have the same powers and prerogatives in the several counties as the county attorneys themselves have in those counties, and it is argued that this is an expressed delegation of official power to the assistants, who are to be appointed by the attorney general, since such assistants, through their appointment, become a part of the department of justice. We cannot so interpret that provision. The first provision of the act recites that "there is hereby constituted an executive department to be known as the department of justice and the attorney general shall be the head of this department." The law does not attempt to specifically enumer-

ate the official members who shall be taken to constitute that department, other than the above recital. As to what officers shall be interpreted to constitute the department of justice must be gathered from the general provisions of the act. As before stated, the attorney general and his deputy are by the statute expressly vested with official powers. Such powers are confined to them alone. They are the only persons, spoken of in the act, who can be deemed to be officers connected with the department of justice. In the eyes of the law these officials, so far as the exercise of the powers of the department is concerned, constitute the department of justice. Many other persons—assistants, clerks and stenographers—are employed in that department, but their mere connection with it vests in them no official power. We must look to the provisions of the law to determine in whom the powers of the department of justice are vested, and those official powers cannot be extended by presumption to others than those in whom such powers are expressly delegated.

It is quite clear that the legislature has not made the assistant attorney general an independent officer, and clothed him with power to act in his own name. At best, he is a mere agent of the attorney general, and, as such, must perform official acts in the name of his principal.

It follows from what has been said that there is no authority under the statute for the assistant attorney general to file an information in his own name, and that, therefore, the information as filed in this case is a nullity.

The judgment is reversed and the cause remanded, with directions to enter a *nolle prosequi*.

REVERSED.