O'CONNOR et al. v. SLAKER et al.

Circuit Court of Appeals, Eighth Circuit.
October 10, 1927.

No. 7767.

1. Courts 489(13)—Purely probate matters are not within federal court's jurisdiction.

Matters of purely probate character are not within the jurisdiction of federal court, and federal court, therefore, had no jurisdiction of suit to determine validity of will, and that plaintiffs be decreed to be the sole devisees and legatees thereunder.

2. Courts 489(13)—Federal court has jurisdiction to determine heirship, and such jurisdiction cannot be destroyed by state.

Federal equity court has jurisdiction, where proper diversity of citizenship and required amount in controversy exists, to determine whether plaintiffs are decedent's heirs at law and their share of his estate, and such right, being a creation of the federal Constitution, cannot be destroyed by any action of a state.

3. Courts 405(2)—Circuit Court of Appeals must notice objection, raised for first time in that court, that suit could not be brought against state (Const. Amend. 11).

Though orderly procedure requires raising of objection in trial court that action against state cannot be brought in federal court by citizens of another state without state's consent, under Const. Amend. 11, Circuit Court of Appeals must notice the objection when made for first time in that court, and, if trial court had no jurisdiction, it could not decide the case as to the state, even if the parties consented that it be there brought.

4. States 191(1)—Except as provided in Constitution, every state has absolute immunity from suit (Const. Amend. 11).

A sovereignty cannot be sued without its consent, and, with the exception named in Const. Amend. 11, every state has absolute immunity from suit.

5. States 191(1)—State's consent to be sued by citizen of another state must be granted by express legislative authority (Const. Amend. 11).

The consent of a state to be sued by a citizen of another state must be granted by express legislative authority, in view of Const. Amend. 11.

6. Courts 303(1)—States 191(1)—State's consent to be sued by private individual may be limited to state's own courts, and immunity from suit in federal court is not thereby waived (Const. Amend. 11).

Under Const. Amend. 11, it is within state's discretion whether it will permit itself to be sued by a private individual, and, if so, in what tribunals, and such consent may be limited to state's own courts, and, if so limited, its immunity from suit in a federal court is not thereby waived.

7. Constitutional law 33—Nebraska constitutional provision that state may sue and be sued is not self-executing (Const. Neb. art. 5, § 22).

Provision of Const. Neb. art. 5, § 22, that the state may sue and be sued, and that the Legislature shall provide in what manner and in what courts suits shall be brought, is not self-executing, and to be effective requires action of Legislature.

8. Courts 303(1)—State's immunity from suit may be waived by voluntary appearance and submission to federal court's jurisdiction, if court can properly determine matter (Const. Amend. 11).

The immunity of a state, under Const. Amend. 11, from suit, may be waived by the voluntary appearance of the state and submission to the jurisdiction and decision of the federal court of the matter in controversy, if the subject is properly one that can be determined by such court; but such appearance does not confer jurisdiction, where none exists.

9. Courts 303(1)—Whether state Attorney General's appearance in federal suit against state constitutes appearance by state depends on his authority (Const. Amend. 11).

Whether the appearance of the state's Attorney General for the state in federal court

amounts to a voluntary appearance by the state, so as to give the court jurisdiction of suit against the state, depends on the authority of the Attorney General, and neither he nor any other state officer can waive state's immunity, under Const. Amend. 11, in absence of a state statute authorizing it to be done, and, if his appearance for the state is in excess of his power, it does not constitute a voluntary submission by the state to the jurisdiction of the court.

**10. Courts ⚖═303(1)—Attorney General of Nebraska has no general authority to appear in suits against state in federal court and consent to waiver of state's immunity from suit (Comp. St. Neb. 1922, §§ 4834–4844; Const. U. S. Amend. 11).**

Though, under Comp. St. Neb. 1922, §§ 4834–4844, powers of the state Attorney General are broad, he has no general authority to appear in suits in federal courts against the state by citizens of another state, and consent to a waiver of the state's immunity from suit under Const. Amend. 11, in view of said Comp. St. 1922, §§ 1100, 1106, and his appearance in such suit did not give federal trial court jurisdiction.

**11. Equity ⚖═94—Suit in equity will not be determined without presence of parties affected by decree.**

In equity, a suit will not be determined without the presence of the parties really affected by the decree.

**12. Courts ⚖═307(1)—State is not a "citizen," within federal statutes relating to suits by citizens of different states.**

A state is not a "citizen," under the judiciary acts of the United States relating to suits by citizens of different states.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citizen.]

**13. Courts ⚖═310—State held not indispensable party in suit to determine heirship, so as to defeat federal court's jurisdiction (Const. Amend. 11).**

State *held* not an indispensable party in suit to determine heirship and rights as heirs of deceased person, so as to defeat jurisdiction of federal court under Const. Amend. 11, since no title vested in state unless there was a failure of heirs, and it was for state to determine whether it would interplead and try that question in the federal court, or risk whatever the effect might be of a decision of the federal court on this question in an action between plaintiffs and the other defendant.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough.

Suit by Charles O'Connor and others against John Slaker, acting administrator of the estate of John O'Connor, deceased, and another. From an order and judgment dismissing the petition on motion, petitioners appeal. Reversed and remanded.

James M. Johnson, of Kansas City, Mo., Bernard McNeny, of Red Cloud, Neb., and Donald W. Johnson, of Kansas City, Mo., for appellants.

P. E. Boslaugh, of Hastings, Neb., O. S. Spillman, of Pierce, Neb., and George Ayres, of Lincoln, Neb., on the brief), for appellee State of Nebraska.

John A. Lawler, of Hastings, Neb., for appellee Slaker.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

KENYON, Circuit Judge. This is an appeal from an order and judgment of the District Court of the United States for the District of Nebraska dismissing upon motion a petition of appellants. The petition is in three counts. In the first appellants claim they are entitled to the estate of John O'Connor, deceased, by virtue of a will bequeathing the same to one Charles O'Connor and in case of his death to his heirs; that he died intestate and that they are his heirs at law; that appellee John Slaker is administrator de bonis non of said estate, and is in possession of all the property of the same, including the real property described in the petition; that said will was contested, and it was held by the Supreme Court of Nebraska (105 Neb. 88, 179 N. W. 401, 12 A. L. R. 199) to be a forgery; that James B. O'Connor, one of the appellants, was tried and convicted in the district court of Adams county, Nebraska, for the alleged forgery, which judgment was reversed by the Supreme Court of Nebraska (110 Neb. 822, 95 N. W. 125); said court stating that the evidence showed the will to be the last will of John O'Connor.

It is asked that the will be adjudged the last will and testament of said John O'Connor, and that plaintiffs be decreed to be the sole devisees and legatees under the same.

The second count is not predicated on any will, but on the alleged fact that plaintiffs are the sole and only heirs at law of the said John O'Connor, deceased, and therefore entitled to inherit his property.

The third count asks that title be quieted, as against the administrator and the state of Nebraska, to the real estate left by the said John O'Connor, and that title thereto be adjudged and confirmed in appellants, as the sole heirs of the said John O'Connor, deceased. The only relief asked as to the state of Nebraska is set forth in the third count.

The court sustained the motion to dismiss the bill on the ground that sole jurisdiction over the causes of action was in the state courts.

It is the claim of appellees that the county court of Nebraska has exclusive original jurisdiction in matters of probate and administration, and that the right to determine the heirs of a deceased person is vested solely in that court; that matters of the character presented by appellants are not within the ordinary equity jurisdiction of the federal courts.

[1] The relief asked in count 1 is in effect the probate of an alleged will which had been adjudicated in the state court to be a forgery. This cannot be done in the federal court. Matters purely of a probate character, which includes, of course, proceedings to probate wills, are not within the jurisdiction of the federal courts.

The Supreme Court of the United States has spoken clearly on this subject. In Ellis et al. v. Davis, 109 U. S. 485, 497, 3 S. Ct. 327, 334 (27 L. Ed. 1006), the court said: "The original probate, of course, is mere matter of state regulation, and depends entirely upon the local law; for it is that law which confers the power of making wills, and prescribes the conditions upon which alone they may take effect; and as, by the law in almost all the states, no instrument can be effective as a will until proved, no rights in relation to it, capable of being contested between parties, can arise until preliminary probate has been first made." In Farrell v. O'Brien, 199 U. S. 89, 110, 25 S. Ct. 727, 734 (50 L. Ed. 101), it was said: "As the authority to make wills is derived from the state, and the requirement of probate is but a regulation to make a will effective, matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States."

In Sutton v. English, 246 U. S. 199, 38 S. Ct. 254, 62 L. Ed. 664, it was held that a suit which was in the nature of one to annul a will, and which under the state law is merely supplemental to proceedings for probate, and cognizable only by the probate court, is not within the jurisdiction of the District Court of the United States. We quote (page 205 [38 S. Ct. 256]) therefrom: "By a series of decisions in this court it has been established that since it does not pertain to the general jurisdiction of a court of equity to set aside a will or the probate thereof, or to administer upon the estates of decedents in rem, matters of this character are not within the ordinary equity jurisdiction of the federal courts; that as the authority to make wills is derived from the states, and the requirement of probate is but a regulation to make a will

effective, matters of strict probate are not within the jurisdiction of courts of the United States; that where a state, by statute or custom, gives to parties interested the right to bring an action or suit inter partes, either at law or in equity, to annul a will or to set aside the probate, the courts of the United States, where diversity of citizenship and a sufficient amount in controversy appear, can enforce the same remedy, but that this relates only to independent suits, and not to procedure merely incidental or ancillary to the probate; and, further, that questions relating to the interests of heirs, devisees, or legatees, or trusts affecting such interests, which may be determined without interfering with probate or assuming general administration, are within the jurisdiction of the federal courts, where diversity of citizenship exists and the requisite amount is in controversy."

See, also, 21 Corpus Juris, p. 121; 25 Corpus Juris, p. 695.

The action of the court as to count 1 was correct.

[2] The question presented as to count 2 is entirely different. It is there assumed that no will was made by John O'Connor, and it is asked that appellants be adjudicated his heirs at law and their share in the estate be determined. The right to have such question determined in the federal court (requisite diversity of citizenship existing and the required amount being in controversy) has been settled by the Supreme Court of the United States. Nor can such right be destroyed by any action of a state. It is a creation of the Constitution of the United States. In Byers v. McAuley, 149 U. S. 608, 620, 13 S. Ct. 906, 910 (37 L. Ed. 867), it is said: "A citizen of another state may establish a debt against the estate. Yonley v. Lavender, 21 Wall. 276 [22 L. Ed. 536]; Hess v. Reynolds, 113 U. S. 73 [5 S. Ct. 377, 28 L. Ed. 927]. But the debt thus established must take its place and share of the estate as administered by the probate court, and it cannot be enforced by process directly against the property of the decedent. Yonley v. Lavender, supra. In like manner a distributee, citizen of another state, may establish his right to a share in the estate, and enforce such adjudication against the administrator personally, or his sureties, Payne v. Hook [7 Wall. 425, 19 L. Ed. 260], supra; or against any other parties subject to liability, Borer v. Chapman [119 U. S. 587, 7 S. Ct. 342, 30 L. Ed. 532], supra; or in other way which does not disturb the possession of the property by the state court."

In the leading case of Waterman v.

Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 43, 30 S. Ct. 10, 54 L. Ed. 80, the court discusses various cases coming before the courts of the United States for the purpose of determining the rights of persons claiming an interest in estates, and considers to what extent the jurisdiction in equity of the courts of the United States may be affected by state statutes, and says (page 43 [30 S. Ct. 12]): "The general rule to be deduced from them is that, inasmuch as the jurisdiction of the courts of the United States is derived from the federal Constitution and statutes, in so far as controversies between citizens of different states arise which are within the established equity jurisdiction of the federal courts, which is like unto the High Court of Chancery in England at the time of the adoption of the Judiciary Act of 1789 [1 Stat. 73], the jurisdiction may be exercised, and is not subject to limitations or restraint by state legislation establishing courts of probate and giving them jurisdiction over similar matters. This court has uniformly maintained the right of federal courts of chancery to exercise original jurisdiction (the proper diversity of citizenship existing) in favor of creditors, legatees and heirs to establish their claims and have a proper execution of the trust as to them."

The court points out that the United States courts, while they may make decrees binding upon the parties, cannot seize and control the property if it is in the hands of a state court, and referring to Farrell v. O'Brien, supra, says (page 44 [30 S. Ct. 13]): "That case recognized what previous cases had held, that in proceedings purely of a probate character there was no jurisdiction in the federal courts. This was in harmony with the rule theretofore laid down in Byers v. McAuley, supra, in which it was held that the federal court could not exercise original jurisdiction to draw to itself the entire settlement of the estate of the decedent and the accounts of administration, or the power to determine all claims against the estate. But it was there decided that a Circuit Court of the United States could entertain jurisdiction in favor of citizens of other states to determine and award by decrees binding in personam their shares in the estates."

In McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 54 L. Ed. 762, the court refers to the Waterman v. Canal-Louisiana Bank & Trust Co. Case, supra, and says: "In that case, following previous decisions of this court, it was held that the chancery jurisdiction of the federal courts to entertain suits between citizens of different states to determine interests in estates, and to have the same fixed and declared, having existed from the beginning of the federal government, and created by the grant of equity jurisdiction to such courts as it existed in the Chancery Courts of England, could not be impaired by subsequent state legislation creating courts of probate."

It is apparent that the Supreme Court of the United States has many times held that the federal courts have jurisdiction of such causes of action as are stated in count 2. What we have said as to count 2 applies also to the relief asked in count 3, with perhaps some qualification.

Another question is presented as to count 3, to which we now direct our attention. Relief is there asked as to the state of Nebraska, in the nature of quieting title in appellants against any claim of the state. The alleged interest of the state in the property of John O'Connor, deceased, is based on section 5686 of the Compiled Statutes of Nebraska for 1922, which provides that upon failure of heirs "title shall vest at once in the state, without an inquest or other proceedings in the nature of office found," and the state claims that the property has passed to it, and its title can only be divested by a finding of heirship by the county court of Adams county, Nebraska.

[3] The state of Nebraska raises in this court for the first time the question that the case could not be brought against the state on account of the Eleventh Amendment to the Constitution of the United States relative to a suit against a state by citizens of another state. Orderly procedure would have required the raising of this jurisdictional question in the trial court. However, we must notice it, Mansfield, Coldwater & Lake Michigan Railway Co. et al. v. Swan et al., 111 U. S. 379, 4 S. Ct. 510, 28 L. Ed. 462; for, of course, if the trial court had no jurisdiction, it could not decide the case as to the state of Nebraska, even if the parties had consented that it be there brought. Chicago, Burlington & Quincy Railway Co. v. Willard, 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521. This we think is the only question of any doubt in this case. We have been favored with no brief on the subject by appellant, doubtless because the question did not make its appearance until the brief of appellee, state of Nebraska, was filed.

[4] It is elemental that a sovereignty cannot be sued without its consent, and, "with the exception named in the Constitution, every

state has absolute immunity from suit." Hopkins v. Clemson College, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Carr v. United States, 98 U. S. 433, 25 L. Ed. 209; United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 27 L. Ed. 171; Cunningham v. Macon & Brunswick R. R. Co., 109 U. S. 446, 3 S. Ct. 292, 609, 27 L. Ed. 992; Hagood & Others v. Southern et al., 117 U. S. 52, 6 S. Ct. 608, 29 L. Ed. 805; In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216; Hans v. Louisiana, 134 U. S. 1, 10 S. Ct. 504, 33 L. Ed. 842; Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 40 L. Ed. 599; Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140; Lankford v. Platte Iron Works, 235 U. S. 461, 35 S. Ct. 173, 59 L. Ed. 316; Hertz et al. v. Knudson (C. C. A.) 6 F.(2d) 812.

[5] The consent of a state to be sued by a citizen of another state must be granted by express legislative authority. United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 27 L. Ed. 171; Chandler v. Dix, 194 U. S. 590, 24 S. Ct. 766, 48 L. Ed. 1129; Title Guaranty & Surety Co. v. Guernsey (D. C.) 205 F. 94. [6] Such consent may be limited to the state's own courts, and, if so limited, its immunity from suit in a federal court is not thereby waived. It is within the state's discretion as to whether it will permit itself to be sued by a private individual, and, if so, in what tribunals. Beers v. State of Arkansas, 20 How. 527, 15 L. Ed. 991; Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140; Chandler v. Dix, 194 U. S. 590, 24 S. Ct. 766, 48 L. Ed. 1129; Murray v. Wilson Distilling Co., 213 U. S. 151, 29 S. Ct. 458, 53 L. Ed. 742; Interstate Const. Co. v. Regents of the University of Idaho (D. C.) 199 F. 509; Deseret Water, Oil & Irr. Co. v. State of California (C. C. A.) 202 F. 498.

[7] Nebraska has to some extent waived its prerogative as to immunity from suit. Section 22, art. 5, of its Constitution, provides that the state may sue and be sued, and that the Legislature shall provide by law in what manner and in what courts suits shall be brought. This provision is not self-executing, and to be effective requires action of the Legislature. Section 1100, Comp. Stat. Neb. 1922, authorizes certain classes of suits against the state to be brought in the district courts of the state. See, as bearing thereon, section 1106 of the Compiled Statutes of 1922. We find no statute, however, of Nebraska expressly consenting in terms that the state may be sued in the federal courts by a citizen of another state. A complexity arises, however, by reason of the appearance in the suit of the Attorney General of the state in behalf of the state.

This phase of the case is difficult to deal with. Notice of this suit was served upon the Attorney General and on the Governor of the state. The Attorney General filed an answer for the state of Nebraska, signed and verified by him, consisting of 11 paragraphs, some admitting and some denying claims of the petition, and asking that the bill be dismissed. The jurisdiction of the court was not challenged in any way. The motion filed by appellee Slaker to dismiss the bill was sustained. A brief is now submitted in this court, signed by the Attorney General, who filed answer for the state in the trial court, in which it is argued that the appearance of the Attorney General in the case was not a consent on the part of the state to be sued, and it is urged in said brief that the case of McShane v. Murray, 106 Neb. 512, 184 N. W. 147, is decisive of the question. This presents a situation somewhat novel.

[8] The immunity of a state from suit may be waived by the voluntary appearance of the state and submission to the jurisdiction and decision of the court of a matter in controversy, if the subject is properly one that can be determined by such court. It does not confer jurisdiction where none exists. In discussing this question the Supreme Court in Clark v. Barnard, 108 U. S. 436, 2 S. Ct. 878, 27 L. Ed. 780, said: "We are relieved, however, from its consideration by the voluntary appearance of the state in intervening as a claimant of the fund in court. The immunity from suit belonging to a state, which is respected and protected by the Constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in the suit, otherwise well brought, in which a state had sufficient interest to entitle it to become a party defendant, its appearance in a court of the United States would be a voluntary submission to its jurisdiction, while, of course, those courts are always open to it as a suitor in controversies between it and citizens of other states. In the present case the state of Rhode Island appeared in the cause and presented and prosecuted a claim to the fund in controversy, and thereby made itself a party to the litigation to the full extent required for its complete determination. It became an actor as well as defendant, as by its intervention the proceeding became one in the nature of an inter-

pleader, in which it became necessary to adjudicate the adverse rights of the state and the appellees to the fund, to which both claimed title."

In Hertz et al. v. Knudson, 6 F.(2d) 812, this court, while holding that the District Court is given no jurisdiction of controversies between the state and citizens of different states upon the ground of diversity of citizenship, also discussed the immunity of a state from suit under the Eleventh Amendment, and said (page 816): "It has been uniformly held under this amendment that a state cannot be made a defendant in a federal court against its consent, but that the privilege may be waived if the state sees fit voluntarily to submit itself to the jurisdiction."

In Gunter v. Atlantic Coast Line R. Co., 200 U. S. 273, 26 S. Ct. 252, 50 L. Ed. 477, it was held that the immunity of the state could be waived and that if it voluntarily becomes a party to a cause and submits its rights for judicial determination it will be bound thereby. In that case the Attorney General filed answer for the state of South Carolina. The Attorney General was by the statutes of the state authorized to appear for the state. It was held that the prohibitions of the Eleventh Amendment do not relate to the power of a federal court to administer relief in cases where jurisdiction as to a state and its officers has been acquired as the result of the voluntary action of the state in submitting its rights to judicial determination. The court there said: "Although a state may not be sued without its consent, such immunity is a privilege which may be waived, and hence where a state voluntarily becomes a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." See, also, State v. Kennedy, 60 Neb. 300, 83 N. W. 87; State v. Mortensen, 69 Neb. 376, 95 N. W. 831, 834, 5 Ann. Cas. 291; Interstate Const. Co. v. Regents of the University of Idaho (D. C.) 199 F. 509; Deseret Water, Oil & Irr. Co. v. State of California (C. C. A.) 202 F. 498.

[9] Whether or not the appearance of the Attorney General for the state in this case amounts to a voluntary appearance by the state depends upon the authority of the Attorney General. Neither he nor any other state officer can waive the immunity of a state in the absence of a statute authorizing it to be done, and if his appearance for the state was in excess of the power vested in him by law it would not constitute a voluntary submission by the state to the jurisdiction of the court. Hagood et al. v. Southern, 117 U. S. 52, 6 S. Ct. 608, 29 L. Ed. 805; Stanley v. Schwalby, 162 U. S. 255, 16 S. Ct. 754, 40 L. Ed. 960; Railroad Tax Cases (C. C.) 136 F. 233.

[10] The Attorney General of Nebraska has been given broad powers by the Legislature of the state. See article 2, c. 53, Comp. Stat. of Neb. 1922. His department is constituted an executive one, with power to control the legal affairs of the state, and he is authorized to appear for the state and defend in any court any cause or matter in which the state may be a party or interested. His powers and duties have been the subject of numerous decisions of the Supreme Court of the state, in a number of which the court has stated that the general control of actions in which the state is interested is in his hands, and that he is the general law officer of the state. State v. Fremont, E. & M. V. R. Co., 22 Neb. 313, 35 N. W. 119; Paxton v. State, 59 Neb. 460, 81 N. W. 383, 80 Am. St. Rep. 689; State v. Pacific Express Co., 80 Neb. 823, 115 N. W. 619, 18 L. R. A. (N. S.) 664; In re Creighton's Estate, 91 Neb. 654, 136 N. W. 1001, Ann. Cas. 1913D, 128; Follmer v. State, 94 Neb. 217, 142 N. W. 908, 910, Ann. Cas. 1914D, 151; Lower v. State, 106 Neb. 666, 184 N. W. 174, 175.

Nevertheless that court has held in McShane v. Murray, 106 Neb. 512, 184 N. W. 147, that the immunity of a state from suit is not waived by the voluntary appearance of the Attorney General. We quote from the syllabus: "Where by its Constitution the state is immune from suits against it, except as the Legislature otherwise provides, the immunity thus provided cannot be waived by a voluntary general appearance in the case and a participation in the trial thereof upon its merits by the Attorney General in an unauthorized action brought against the state." In the opinion it is said: "Of course, if the plaintiff had no authority or legal right to make the state a party to this action or maintain this suit against it, the voluntary appearance by the Attorney General in behalf of the state and his failure to object to the jurisdiction of the court over the state did not, and could not, in any wise bind the state so as to make the decree rendered against it of any validity." And in Palmer v. State of Ohio, 248 U. S. 32, 39 S. Ct. 16, 63 L. Ed. 108, it was held that the right of individuals to sue a state in either federal or state courts cannot be derived from the Constitution or laws of the United States; that it must come from the consent of the

state, and whether or not the required consent to be sued has been given by the Constitution or laws of a state must be determined as a question of local state law, as to which the decision of the state Supreme Court is controlling.

In Stanley v. Schwalby, 162 U. S. 255, 270, 16 S. Ct. 754, 760 (40 L. Ed. 960), the court said: "The United States, by various acts of Congress, have consented to be sued in their own courts in certain classes of cases; but they have never consented to be sued in the courts of a state in any case. Neither the Secretary of War, nor the Attorney General, nor any subordinate of either, has been authorized to waive the exemption of the United States from judicial process, or to submit the United States, or their property, to the jurisdiction of the court in a suit brought against their officers."

While the language of the statutes of Nebraska on the subject is not clear, and while broad power is given the Attorney General thereby, yet in view of the holdings of the Supreme Court of the state we are satisfied that the Attorney General has not been granted authority by the Legislature of Nebraska to appear in suits of this nature against the state in the federal courts and consent to a waiver of the immunity of the state from suit. This case being within the category of suits against a state, and the immunity from suit in the federal court not having been waived, the trial court was without jurisdiction in the case as to the state of Nebraska, and as to it the order of dismissal was right. Farish v. State Banking Board, 235 U. S. 498, 35 S. Ct. 185, 59 L. Ed. 330; Deseret Water, Oil & Irr. Co. v. State of California (C. C. A.) 202 F. 498; Hertz et al. v. Knudson (C. C. A.) 6 F.(2d) 812.

[11, 12] The state also takes the position that, while it cannot be made a party to this suit in the federal court, it is an indispensable party to the action; that the other appellee is a mere nominal party, and hence the case cannot proceed, but should be dismissed, not only as to it, but as to the other appellee. The result of sustaining such position would be to force appellants to try in the state court an issue which we hold is cognizable in equity in the federal court. Of course, it is equitable doctrine not to determine a suit without presence of the parties really affected by the decree. Minnesota v. Northern Securities Co., 184 U. S. 199, 22 S. Ct. 308, 46 L. Ed. 499. It is also well settled that a state is not a citizen under the Judiciary Acts of the United States, relating to suits by citizens of different states. Ames v. Kansas, 111 U. S. 449, 4 S. Ct. 437, 28 L. Ed. 482; Postal Telegraph Cable Co. v. Alabama, 155 U. S. 482, 15 S. Ct. 192, 39 L. Ed. 231; Hertz et al. v. Knudson (C. C. A.) 6 F.(2d) 812; Utah Const. Co. v. State Highway Commission of Wyo. (D. C.) 16 F.(2d) 322.

[13] We are not convinced, however, that the state of Nebraska is an indispensable party to this action. It has no title whatever in the property claimed by appellants, if they are in fact the heirs at law of John O'Connor. No title vests in the state, unless there is failure of heirs. The question of heirship can be determined in the federal court without the presence of the state as a party, and it is for the state to determine whether it will interplead and try that question there, or risk whatever the effect might be of a decision of the said federal court on this question in an action between appellants and the other appellee.

The dismissal of the case as to appellee state of Nebraska, and of count 1 as to both appellees, was not erroneous. The order of dismissal as to counts 2 and 3 as to appellee John Slaker was erroneous, and is reversed, and the case remanded for further proceedings.

Reversed and remanded.