STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE, V.
PAUL K. RIVERA, APPELLEE AND CROSS-APPELLANT.

711 N.W.2d 573

Filed March 28, 2006.   No. A-04-1142.

Jon Bruning, Attorney General, and Corey M. O'Brien for appellant.

James H. Monahan and Maureen K. Monahan, of Monahan & Monahan, for appellee.

INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.

CASSEL, Judge.

## I. INTRODUCTION

Paul K. Rivera pled no contest to child abuse, a Class IIIA felony, and the district court for Douglas County sentenced Rivera to 3 years' probation. The State of Nebraska, through a specially appointed deputy county attorney, appeals the sentence imposed on Rivera as excessively lenient. Rivera cross-appeals, alleging that (1) because the record fails to show that the Douglas County Attorney requested the appointment, the district court lacked the authority to appoint a special deputy county attorney; (2) the State failed to follow the proper procedure to appeal the sentencing; and (3) the State failed to timely file an appellate brief. For the reasons set forth below, we affirm.

## II. BACKGROUND

The State originally charged Rivera with child abuse on December 1, 2003, in violation of Neb. Rev. Stat. § 28-707(5) (Cum. Supp. 2004), a Class III felony, based upon injuries sustained by his infant daughter. Rivera pled no contest to a reduced charge of child abuse, a Class IIIA felony in violation of § 28-707(4). The factual basis for the charge, provided by the prosecutor, is as follows:

> Your Honor, on the date or the time frame set forth in the information, for a period of that time and the last few days in that time frame, the defendant and his family were in Douglas County. During that period of time, the child . . . was taken to Children's Hospital and found to have . . . leg fractures, five to both legs. . . . [T]he child was very young. I believe her date of birth was 10/1 of '03. The opinions of the radiologist and treating physicians at Children's Hospital

was that these were injuries caused by non-accidental trauma to the child.

. . . Rivera did make a statement to the police indicating that he was responsible for mishandling the child to such a degree that these injuries and fractures were caused.

Rivera's counsel added, "It was a situation where . . . Rivera was doing what they called gas exercises, rotating his little girl's legs, and he snapped one of the legs." The court accepted Rivera's no contest plea.

On September 28, 2004, the matter came on for sentencing. During the sentencing hearing, the court stated:

[T]he Court has reviewed your record, which basically up to this point is traffic misdemeanors. Why this happened, I think only you know. You flipped out supposedly. You've been doing everything that you're supposed to do, stayed in Nebraska. You've been working and continuing with your treatment. There's a good report from the treatment facility. They want you to continue. . . .

. . . .

. . . The Court's going to put you on probation. Probation will be for three years. Conditions of probation are that you stay out of trouble. . . . [T]he Court has no problem if you do wish to move to Colorado and join your family. This matter can be transferred there, but you have to get it all worked out with the probation office.

The transcript contains an "Order Appointing Special Deputy County Attorney" dated October 6, 2004, and file stamped on October 13. That order, signed by a district court judge other than the judge who took Rivera's plea and imposed sentence, states in part: "This matter comes [sic] the motion of the Court on this 6th day of October, 2004, seeking appointment of Corey M. O'Brien, . . . Assistant Attorney General, to act as Special Deputy County Attorneys [sic] in all matters related to the above-captioned matter." The order further stated that the court found the motion to be well taken and that the court appointed Corey M. O'Brien to serve as special deputy county attorney "pursuant to Neb. Rev. Stat. § 23-1204.01 ([Reissue] 1997)." The transcript does not contain any written motion requesting appointment of a special deputy county attorney. Also on October 6, the "Special Deputy

Douglas County Attorney, Corey M. O'Brien," requested permission from the Attorney General to appeal the sentence, and the chief deputy Attorney General, acting in the name of the Attorney General, consented. On behalf of the State and in his capacity as a special deputy county attorney, O'Brien timely appealed to this court pursuant to Neb. Rev. Stat. § 29-2320 (Cum. Supp. 2004), claiming that Rivera's sentence was excessively lenient.

### III. ASSIGNMENTS OF ERROR

The State alleges that the trial court abused its discretion in imposing an excessively lenient sentence.

On cross-appeal, Rivera alleges that the appeal should be dismissed because the assistant attorney general failed to (1) follow the proper procedure to be appointed a special deputy county attorney, (2) follow the proper procedure to appeal the sentence, and (3) timely file his brief on appeal.

### IV. STANDARD OF REVIEW

■ Whether an appellate court is reviewing a sentence for its leniency or its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion. *State v. Rice*, 269 Neb. 717, 695 N.W.2d 418 (2005).

### V. ANALYSIS

#### 1. JURISDICTION

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. *Merrill v. Griswold's, Inc.*, 270 Neb. 458, 703 N.W.2d 893 (2005). Thus, we begin by considering the assignments of error raised by Rivera's cross-appeal.

■ The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal. *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001). To the extent the State is authorized to appeal an adverse ruling in a criminal case, the appeal is to be taken in accordance with, and is constrained by, the terms of the statute authorizing the appeal. *State v. Jones*, 264 Neb. 812, 652 N.W.2d 288 (2002).

Rivera alleges in his brief that this court does not have jurisdiction over the appeal because the State did not follow proper procedures pursuant to Neb. Rev. Stat. §§ 23-1204.01 (Reissue 1997) and 29-2320 and 29-2321 (Cum. Supp. 2004). We address each statute in turn.

### (a) § 23-1204.01

Rivera argues both that § 23-1204.01 requires that a special deputy county attorney must be procured by the county attorney and that the record shows the absence of any motion or request made by or on behalf of the county attorney to procure such assistance. Section 23-1204.01 provides in relevant part: "The county attorney of any county may, under the direction of the district court, procure such assistance in any investigation or appearance or the trial of any person charged with a crime which is a felony, as he may deem necessary for the trial thereof . . . ."

According to the language in the order appointing O'Brien as the special deputy county attorney, which order we have quoted above, the court itself initiated the appointment on the court's own motion. Section 23-1204.01 authorizes such an appointment "under the direction of the district court." In appellate proceedings, unless there is proof to the contrary, the journal entry in a duly authenticated record of the trial court imports absolute verity. *Alder v. First Nat. Bank & Trust Co.*, 241 Neb. 873, 491 N.W.2d 686 (1992).

Rivera has failed to present proof to the contrary. While we agree with Rivera that the transcript before us contains no such motion or request by the county attorney, we observe that with one exception, all the praecipes for transcript requested specific documents and none of the praecipes requested any motion by the county attorney. Moreover, none of the praecipes for transcript requested the trial court clerk to certify to the absence of any such motion. The one exception is the request in one of the State's praecipes for "[a]ll entries contained on the [d]istrict [c]ourt docket sheet for this case." The trial docket entry for October 6, 2004, states: "On motion of County Attorney, signed Order releasing presentence investigation file. Signed Order appointing Special Deputy County Attorney." The record shows that the first motion referred to in the October 6 docket entry, the

motion to release the presentence investigation, was filed by O'Brien as the "Special Deputy Douglas County Attorney." The second order noted in the docket entry is the order we have already discussed and quoted above, and the language of the docket entry does not contradict the wording of the order of appointment. The docket entry is silent regarding whether the appointment was made on the court's own motion or initiated by the county attorney or any other person. Similarly, no praecipe directed the official court reporter to include any proceedings held on October 6 or requested the reporter to certify to the absence of any recorded proceedings on that date.

Rivera's brief speculates that because of some perceived need to meet the requirements of § 29-2321, which requirements we discuss below, the Attorney General himself instigated the appointment of his assistant as a special deputy county attorney. Such speculation, however, cannot constitute the proof necessary to defeat the presumption of absolute verity accorded to the court's order. Because the record contains no contrary showing, Rivera's argument constitutes pure speculation. In the absence of any contrary showing in the record, we accept the statements in the October 6, 2004, order as fact and determine that the district court appointed the special deputy county attorney on that court's own motion.

■ Rivera's argument that the county attorney must request an appointment under § 23-1204.01 ignores the statutory language concerning the "direction" of the district court. The legislative history cited by Rivera does not state that such an ap-pointment cannot be made on the district court's own motion and seems more likely to have been pertinent to Neb. Rev. Stat. § 23-1205 (Reissue 1997), which concerns appointments made "[i]n the absence, sickness or disability of the county attorney . . . or upon request of the county attorney for good cause." It has long been held that an objection to the appearance of counsel appointed pursuant to § 23-1204.01 must be supported by at least some showing that the county attorney did not request or require any assistance and that the court did not appoint counsel for such purpose. See *Blair v. State*, 72 Neb. 501, 101 N.W. 17 (1904). As we have already demonstrated, Rivera made no such showing. Indeed, there is nothing in the record to show

that Rivera ever asserted to the district court any objection concerning O'Brien's appointment.

### (b) § 29-2320

■ Rivera next argues that an appeal of "a sentence as too lenient" may be made only by a "prosecuting attorney" and that the Attorney General is not a "prosecuting attorney." Brief for appellee at 19. Section 29-2320 provides in pertinent part that "the prosecuting attorney charged with the prosecution" of the defendant convicted of a felony following a plea of nolo contendere "may appeal the sentence imposed if such attorney reasonably believes, based on all of the facts and circumstances of the particular case, that the sentence is excessively lenient." A prosecuting attorney, for purposes of § 29-2320, means a county attorney, city attorney, or designated attorney. Neb. Rev. Stat. § 29-2315 (Cum. Supp. 2004).

■ In the case before us, the special deputy county attorney appointed by the district court was also an assistant attorney general. That individual was not involved in the prosecution of the case until after sentencing, and his actions were all taken in the express assertion of his authority as a special deputy county attorney. None of his actions were taken in the name of the Attorney General. An assistant attorney general is the agent of the Attorney General and not an independent officer, and his official acts must be performed in the name of his principal. *Lower v. State*, 106 Neb. 666, 184 N.W. 174 (1921). Because the actions were taken in the name of the special deputy county attorney, the filing appears to be in literal compliance with that portion of § 29-2320 referring to a county attorney.

Further, the specially appointed officer may be a "designated attorney" within the meaning of § 29-2320. We are unable to find any Nebraska case or statute defining a "designated attorney." However, a dictionary definition of the term "designate" is as follows: "1. to mark or point out; indicate; show; specify. 2. to denote; indicate; signify. 3. to name; entitle; style. 4. to nominate or select for a duty, office, purpose, etc.; appoint, assign. . . . 5. named or selected for an office, position, etc., but not yet installed." Webster's Encyclopedic Unabridged Dictionary of the English Language 391 (1989). Because the district court, on

its own motion, appointed an assistant attorney general as a special deputy county attorney, such attorney could be considered a "designated attorney" and hence a "prosecuting attorney" for purposes of § 29-2320.

### (c) § 29-2321

Finally, § 29-2321 provides:

Appeals under section 29-2320 shall be taken as follows:

(1) Within ten days of the imposition of sentence, the prosecuting attorney shall request the approval of the Attorney General to proceed with such appeal. A copy of such request for approval shall be sent to the defendant or counsel for the defendant;

(2) If the Attorney General approves the request described in subdivision (1) of this section, the prosecuting attorney shall file a notice of appeal indicating such approval in the district court. Such notice of appeal must be filed within twenty days of the imposition of sentence. A copy of the notice of appeal shall be sent to the defendant or counsel for the defendant;

(3) If the Attorney General does not approve the request described in subdivision (1) of this section, an appeal under sections 29-2320 to 29-2325 shall not be permitted; and

. . . .

Upon compliance with the requirements of this section, the appeal shall proceed as provided by law for appeals to the Court of Appeals.

The record shows that (1) the district court sentenced Rivera on September 28, 2004, (2) the same court appointed O'Brien on October 6 to serve as the special deputy county attorney, and (3) O'Brien, acting as the "Special Deputy Douglas County Attorney," requested and received consent from the Attorney General on October 6 to proceed with the appeal. Also on October 6, the special deputy county attorney filed a notice of intent to prosecute appeal and attached the letter from the Attorney General consenting to the appeal. The record shows literal compliance with § 29-2321.

Rivera maintains that the Legislature requires the consent of two separate prosecutorial offices and that the current appeal represents "a direct violation of the legislative intent of two separate

prosecutors agreeing the sentence should be appealed." Brief for appellee at 20. This argument presumes that O'Brien was not making an independent judgment as a special deputy county attorney. Once again, this argument is based upon pure speculation and is not supported by the record.

### (d) § 84-204

One might wonder why we do not base our analysis upon Neb. Rev. Stat. § 84-204 (Reissue 1999), which states that "[t]he Attorney General and the Department of Justice shall have the same powers and prerogatives in each of the several counties of the state as the county attorneys have in their respective counties." Accord *State v. Hutter*, 145 Neb. 798, 18 N.W.2d 203 (1945). The record does not establish that the Attorney General ever invoked the authority granted by § 84-204. There is no written motion requesting the appointment of O'Brien, and as we have already pointed out, the district court's written order records that the action was taken on that court's own motion. All of O'Brien's subsequent actions were taken expressly invoking his authority as a special deputy county attorney. The State has not filed any answer brief responding to Rivera's cross-appeal, so we have not been favored with any responsive argument. While it is a curious circumstance that the person appointed by the district court as a special deputy county attorney also happens to be an assistant attorney general, we must decide the issues upon the record as presented. We therefore express no opinion whether the Attorney General could have brought the appeal based upon the authority of § 84-204.

### 2. FILING OF BRIEFS

■ Rivera argues that the State's appeal must be dismissed because it was filed late. According to Neb. Ct. R. of Prac. 9A (rev. 2001), "briefs . . . must be filed within the times stated in the rules." The State moved for an extension of time until January 28, 2005, to file its brief, and this court granted the request. Despite the extension of the expiration date to January 28, the State did not file its brief until February 8. However, as of that date, this court had not yet issued a notice of default.

■ If the appellant fails to file its brief within the time allowed by the rules, the Supreme Court Clerk is directed to mail

a notice of default to the appellant or appellant's counsel of record. See Neb. Ct. R. of Prac. 10A (rev. 2000). Failure to file a brief in response to that notice subjects the appeal to dismissal. *Id.* Because the State filed its brief prior to issuance of any notice of default, rule 10A provides no support for dismissal of the State's appeal. See, also, *State v. Campbell,* 260 Neb. 1021, 620 N.W.2d 750 (2001) (although failure to comply with Nebraska Supreme Court rules may in some instances result in its not considering issue raised on appeal, failure to comply with rule requiring jurisdictional statement is not jurisdictional and does not divest court of jurisdiction).

Although we expect the officers of the State to adhere to the highest professional standards and to timely comply with this court's rules, we find no merit in Rivera's argument.

### 3. Sentence

Rivera pled no contest to the Class IIIA felony charge of child abuse. Section 28-707 provides in relevant part:

(1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:

(a) Placed in a situation that endangers his or her life or physical or mental health;

(b) Cruelly confined or cruelly punished;

(c) Deprived of necessary food, clothing, shelter, or care;

. . . .

(3) Child abuse is a Class I misdemeanor if the offense is committed negligently.

(4) Child abuse is a Class IIIA felony if the offense is committed knowingly and intentionally and does not result in serious bodily injury as defined in section 28-109.

(5) Child abuse is a Class III felony if the offense is committed knowingly and intentionally and results in serious bodily injury as defined in such section.

(6) Child abuse is a Class IB felony if the offense is committed knowingly and intentionally and results in the death of such child.

A Class IIIA felony is punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both; it has no minimum punishment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2004). On the

other hand, a Class III felony—with which Rivera was originally charged—is punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. See *id.*

The State argues that the district court abused its discretion in failing to consider "Rivera's initial lies to hospital staff and law enforcement[,] his continued denials of culpability despite his admission and the overwhelming medical evidence indicating this was not an accident[,] and the extent and severity of the injuries sustained by the 36 day old victim." Brief for appellant at 10.

The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Fields*, 268 Neb. 850, 688 N.W.2d 878 (2004). In determining whether a sentence imposed is excessively lenient, Neb. Rev. Stat. § 29-2322 (Reissue 1995) requires that we have regard for the following:

(1) The nature and circumstances of the offense;

(2) The history and characteristics of the defendant;

(3) The need for the sentence imposed:

(a) To afford adequate deterrence to criminal conduct;

(b) To protect the public from further crimes of the defendant;

(c) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(4) Any other matters appearing in the record which the appellate court deems pertinent.

We next consider those factors.

The medical records contained in the presentence report reveal that on November 7, 2003, Rivera and his wife took their daughter to the hospital. Rivera told hospital staff that he had been sitting in a chair and holding the child and that when he went to get up, he dropped the child because his arm had fallen asleep. Initial radiographs disclosed three closed fractures of the right leg, two closed fractures of the left leg, and a closed fracture of

a rib. The "Impression" section of the radiology report contains the following statement: "Findings are suspicious for a corner fracture/classic metaphyseal lesion of the right distal femoral metaphysis. This raises concern for possible non-accidental trauma and consideration to a skeletal survey is suggested for further evaluation." Based on the child's metaphyseal fractures bilaterally, the doctor highly suspected child abuse. Another medical record contained in the presentence report states: "This is a 5-week-old female who was noted to have multiple fractures by radiology, old fractures. She had been seen by orthopedics on 11/07/2003 and was found to have a right femur fracture."

According to a supplementary police report contained in the presentence report, Rivera told police that after he had dropped his daughter, he compared her legs and twisted them to see if she had movement; that when he straightened out one of her legs, it "popped"; and that he felt the pop and then the leg went limp. Rivera told the police that he knew something was wrong but that he did not know if it was from the fall or if it was caused by him. According to another supplementary police report, a doctor stated that the right femur oblique displacement was from a direct trauma and a large force and that that doctor had seen such injuries caused by a motor vehicle accident or a significant trauma. At the time of the presentence investigation, Rivera's daughter was in a harness temporarily in order to promote healing, and she was healing well.

Rivera's presentence report reveals that he was born in 1964, graduated from high school, and attended some college. The report shows that Rivera was a resident of Colorado, that he was just visiting Nebraska at the time of the offense, and that he was gainfully employed with the U.S. Postal Service prior to the offense but had to resign because he had not been allowed to return to Colorado. Because of a protection order against Rivera filed by his wife and the conditions of Rivera's release of bond, Rivera was living in Lincoln with his brother-in-law and was working 40 hours per week at a convenience store. His wife and their children had returned to Colorado. According to Rivera, his wife was willing to consider reconciliation if Rivera continued with counseling, but her primary concern was for the safety of the children. The presentence report states that Rivera's wife was

setting up counseling for Rivera when he was able to return to Colorado, but she had informed Rivera that he would not be allowed to move back into the marital home and not be allowed to see the children unless it was supervised visitation.

The presentence report shows the following prior convictions of Rivera: driving under the influence in 1986, passing on the right in 1992, careless driving and speeding 20 or more miles per hour over the limit in 1994, and speeding 10 to 19 miles per hour over the limit and driving under the influence in 1995.

Rivera's statement contained in the report stated that he had been giving his daughter leg exercises, that he had done it in an extreme manner, that he had felt her leg pop, and that he had then stopped. The report states:

> When asked about the discrepancy between this written statement and the statements he made to the police, [Rivera] said "something happened inside" him at the time. He said he has learned that he was under a lot of stress at the time. He said he never felt rage before and couldn't explain it.

The report further stated that Rivera "gets vague when asked what exactly he did to cause the numerous fractures to his daughter's legs and to her rib."

Rivera's therapist stated that she believed Rivera would be safe both in his community and with his family and children, that it appeared the incident was a one-time event related to multiple stressors, and that Rivera had "tremendous" remorse and concern that a similar event should never recur. An assessment of behavioral risks administered as part of the presentence investigation showed that Rivera scored in the "low risk range" for violence; however, he scored in the "maximum risk range" for truthfulness. The probation officer stated that Rivera tested below the threshold for intensive supervision probation. The probation officer recommended that Rivera be placed on probation, that an interstate transfer to Colorado be requested, and that counseling be continued through his established treatment provider in Nebraska, with followup by an accredited agency in Colorado.

We are cognizant of our decision in *State v. Charles*, 13 Neb. App. 305, 691 N.W.2d 567 (2005), which also involved

serious physical injuries to an infant. Before undertaking a comparison of *Charles* to the instant case, we recall that "[i]t is difficult to color-match cases when reviewing the terms of sentences." *State v. Haynie*, 239 Neb. 478, 491, 476 N.W.2d 905, 914 (1991). We also recognize that it is not the function of an appellate court to conduct a de novo review of the record to determine whether a sentence is appropriate. *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). So long as the trial court's sentence is within the statutorily prescribed limits, is supported by competent evidence, and is not based on irrelevant considerations, an appellate court cannot say that a trial court has abused its discretion. Such a sentence is not untenable, does not unfairly deprive a litigant of a substantial right, and does not deny a just result. *Id.* Nonetheless, a brief comparison reveals that *Charles* is distinguishable from the instant case in several key respects.

In *Charles*, pursuant to a plea agreement, the defendant was convicted of intentional child abuse in violation of § 28-707(5), which is classified as a Class III felony punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. In the instant case, Rivera was convicted of a Class IIIA felony, for which the statutory range of penalties is much less severe.

In *Charles*, the district court was operating under an incorrect premise—that the child was not a victim of shaken baby syndrome but instead had hit his head on the ceiling, the coffee table, and the floor when the defendant threw him in the air and failed to catch him. This court stated both that the fact the trial court "either mistakenly concluded that [the child] was not injured by shaking or simply ignored that fact" was an important consideration in the appeal and that the trial court "was clearly wrong in not regarding the nature and circumstances of the offense as a shaken baby case." *Charles*, 13 Neb. App. at 310, 691 N.W.2d at 571. We concluded that the trial court's misapprehension of the nature and circumstances of the crime had an effect on the sentence imposed and that such effect would likely have been to lessen the sentence.

Because of the injuries sustained by the child in *Charles*, the child was unable to crawl, had limited use of his right arm, suffered two or three seizures a day, and possibly did not have full

vision. The child's mother no longer worked in order to stay home with the child, to take him to therapy twice a week, and to be home when a therapist from the schools came to their home once a week to work with the child. As we have already noted above, the infant in the case before us is healing well, and no indication of any permanent injuries appears in the record.

In *State v. Charles*, 13 Neb. App. 305, 314, 691 N.W.2d 567, 574 (2005), on the assessment of behavioral risks, the defendant scored in the " 'problem risk range' " for truthfulness and in the " 'medium risk range' " on the violence scale. A family advocacy program counselor initiated contact with the defendant, and the defendant met twice with the counselor for approximately 30 minutes each time; there was no indication that the defendant made any further efforts toward rehabilitation. The probation office made no recommendation regarding the sentence, and the subsequently imposed terms of the 18-month probationary sentence required no counseling and no community service. We stated that the trial court's sentence allowed the defendant to "put this entire tragedy 'behind her' with little or no effort on her part and no punishment," and we believed that she should have to "directly confront the fact that she has been convicted of a major felony, intentional child abuse, and that she should think long and hard about why it happened and the potential lifelong consequences—physical, emotional, and financial—to [the child] and his family." *Id.* at 318, 691 N.W.2d at 576-77.

In the instant case, the court sentenced Rivera to 3 years' probation, which is nearly twice as long as the term of probation imposed in *Charles*. In the case before us, the county attorney amended the charge to an offense with no minimum punishment and the presentence report and remarks at the sentencing hearing show the absence of any request or argument for incarceration. Rivera's probation officer recommended that he be placed on probation and transferred to Colorado. Unlike the situation in *Charles*, in the instant case, there is no indication from the record before us that the trial court misapprehended the nature and circumstances of the offense.

Among Rivera's terms and conditions of probation are that he refrain from any unlawful conduct, work at gainful employment or otherwise keep productively busy during the term of probation,

and continue with therapy sessions either with his established treatment provider in Nebraska or with a similar treatment provider in Colorado should he request to transfer the probation to Colorado.

At the time of the presentence investigation, Rivera was 40 years old and had no history of violence. Rivera's psychiatrist and therapist believed that with continued counseling, he did not pose a risk to his wife or children. In contrast to the defendant in *Charles*, Rivera had taken, and was continuing to take, steps to address the consequences of his actions. The sentence in this case is supported by competent evidence and does not appear to be based on irrelevant considerations. We cannot say that such sentence is untenable.

## VI. CONCLUSION

We find that the record fails to contradict the statement in the trial court's order that the special deputy county attorney was appointed on the court's own motion. We further find that the procedural requirements for appeal of the sentence by the State were satisfied and that we acquired jurisdiction of this appeal. Finding no abuse of discretion in the sentence of probation, we affirm the sentence of the trial court.

AFFIRMED.