IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CARR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAMAL D. CARR, APPELLANT.

Filed April 14, 2026.    Nos. A-25-485, A-25-486.

Appeals from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge.
Affirmed as modified.

Robert Wm. Chapin, Jr., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Jamal D. Carr appeals from his plea-based convictions in two separate cases in the district court for Lancaster County. The two cases have been consolidated on appeal. In both cases he asserts his pleas were involuntary, his sentences were excessive, and his trial counsel was ineffective. Based on the reasons that follow, Carr's convictions in both cases are affirmed and his sentences--specifically, his credits for time served--are modified.

## BACKGROUND

In case No. A-25-485, Carr was charged with two robbery counts, each a Class II felony. In case No. A-25-486, he was charged with first degree assault, a Class II felony; burglary, a Class IIA felony; and terroristic threats, a Class IIIA felony. Pursuant to a global plea agreement, in case No. A-25-485 Carr pleaded no contest to attempted robbery, a Class IIA felony. In case No.

A-25-486, Carr pleaded no contest to attempted possession of a firearm by a prohibited person, a Class II felony, and terroristic threats, a Class IIIA felony. As part of the global plea agreement, the State agreed to dismiss a third case where Carr had been charged with possession of a firearm by a prohibited person, a Class ID felony, and possession of a stolen firearm, a Class IIA felony. The State also agreed it would not add an additional charge of use of a firearm during the commission of a felony, a Class IC felony.

At a joint plea hearing, Carr was advised of the nature of the amended charges to which he was pleading, the possible penalties, and his constitutional rights. The State also recited a factual basis in support of the charges in each case.

In summary, in case No. A-25-485, police officers responded to a robbery that occurred at an O'Reilly Auto Parts store on July 14, 2024. The clerk and manager told officers that a white male, later identified as Rodney Ross, and a black male, later identified as Carr, entered the store. The black male pointed a sawed-off shotgun at them. The manager was directed to open the safe and the suspects took the money inside, as well as several fuel cards and key rings, and then fled. Surveillance of the business showed a gold Impala vehicle leaving the scene. The mother of Jasmine Parker, an acquaintance of Carr's, owned a gold Impala and Carr had access to the vehicle.

On July 24, 2024, officers were dispatched to a robbery that occurred at another O'Reilly Auto Parts store location. It was reported that a white male and a black male went into the store. The white male pointed a sawed-off shotgun at the clerk and asked if he was the manager. The black male forced the clerk and manager to the back room, demanding money from the safe. The black male punched the manager in the right cheek when he initially did not comply. Once the manager opened the safe, the suspects took the money and several keys from the safe. They fled in a black Ford Explorer, a vehicle that belonged to Parker.

Parker gave information to law enforcement that she received from Ross, the white male involved in the two robberies. She claimed Ross told her that he was the one holding the shotgun during the robbery on July 24, 2024, and that Carr was the one who operated the safe, and he had broken the key to the safe at the time. This was not information that was publicly known by anyone, and it was found to be accurate information.

Parker also told law enforcement that after the first robbery on July 14, 2024, Carr came to her apartment and told her to discard the cash drawers and money bags, and that she did so. Parker also identified the firearm she retrieved for Carr to use during the two robberies. Photos of this firearm were on Carr's phone.

The facts surrounding case No. A-25-486, in summary, were that on May 13, 2024, police officers were called to the home of Dezarae Mann regarding a burglary in progress. Upon arrival, officers found Demetric Rogers, Mann's boyfriend, lying at the top of the stairs with numerous injuries. Mann told the officers that two suspects forced entry into her home and assaulted Rogers. She stated that she hid in a closet and heard a male voice that she did not know and a female voice she recognized as being Amuk James, who was in a relationship with Carr. Rogers and James had previously been in a relationship.

At the hospital, Rogers told police officers that earlier that day he had gone to James' apartment to retrieve clothing, and he and James got into an argument. Carr was present in the apartment at the time. When Rogers left, he went back to Mann's home. Rogers told officers he subsequently heard a loud bang upstairs, went to investigate, and was confronted by Carr pointing

- 2 -

a handgun at him. The two began fighting and Carr hit Rogers several times in the face and head with the handgun. Rogers had numerous lacerations on his head and face, missing teeth, and a broken mandible. At Mann's home, officers found three live 9-mm handgun rounds and "a magazine spring for a semi-automatic handgun, base plate, floor plate, and a follower." The gun was not located at the scene.

A month later, Carr was arrested at his girlfriend's house. A safe was located in the residence that contained a Ruger handgun with an extended magazine, a wallet containing a driver's license belonging to Carr, and a Visa debit card in Carr's name. While in jail, Carr made several phone calls in which he stated, "It's inevitable, I'm going to be charged with a gun," and "I told them it was my safe. If the safe wasn't there, I wouldn't be tripping right now."

DNA testing revealed the base of the magazine had DNA belonging to Carr. The baseplate and barrel of the gun had Rogers' DNA, and the slide of the firearm had DNA from both Rogers and Carr.

At the time of the assault on Rogers, Carr was a convicted felon and was not allowed to legally possess a firearm.

The district court found there was a sufficient factual basis to support the pleas in both cases. The court further found that Carr understood his rights, and he freely, voluntarily, intelligently, and knowingly waived them; that he understood the charges and possible penalties; and his pleas of no contest were made freely, voluntarily, intelligently, and knowingly. The court accepted Carr's pleas in both cases and found him guilty of the charges to which he pleaded no contest in each case. The court ordered a presentence investigation report (PSI) and set the matter for sentencing.

The sentencing hearing was held on June 3, 2025. The court first addressed a motion to strike an erroneous fact from the factual basis in case No. A-25-485 filed by Carr's counsel. Specifically, Carr took issue with the statement that the black male (Carr) punched the manager in the right cheek during the robbery on July 24, 2024. Carr's counsel argued that the victim indicated he was struck by the white male (Ross), not Carr, and wanted the factual basis modified to reflect this. Counsel offered two exhibits to support the assertion, which were received without objection, and were included in the PSI. Carr's counsel conceded that even without this detail, there was a sufficient factual basis to support Carr's conviction in case No. A-25-485.

The district court stated that Carr's counsel had corrected the fact she wanted to correct, and it would consider that change for purposes of sentencing. However, the court also noted the factual basis was sufficient to support Carr's plea even without this fact.

In case No. A-25-485, the court sentenced Carr to 18 to 20 years' imprisonment for attempted robbery to be served consecutively to his sentence in case No. A-25-486, and he was granted 55 days of credit for time served in this case. In case No. A-25-486, the court sentenced Carr to 17 to 20 years' imprisonment for attempted possession of a firearm by a prohibited person, and 3 to 3 years' imprisonment for terroristic threats, to be served consecutively to one another and consecutively to the sentence imposed in case No. A-25-485. Carr was granted 288 days of credit for time served in this case.

ASSIGNMENTS OF ERROR

In both cases, Carr assigns that the district court erred in (1) finding his pleas were made knowingly, voluntarily, intelligently, and freely and (2) ordering excessive sentences.

Carr also assigns as error in both cases that his trial counsel was ineffective. Specifically, in case No. A-25-485, he assigns that his trial counsel was ineffective "for not contesting the factual basis given by [the State] and not arguing that the sentence was excessive in light of the treatment of the co-defendant." In case No. A-25-486, he assigns that trial counsel was ineffective "by not objectioning [sic] to the factual basis, by not raising sentence of co-defendant and by not asking for new trial based on newly discovered evidence."

STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Tvrdy*, 315 Neb. 756, 1 N.W.3d 479 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

ANALYSIS

*State's Objection and Motion to Strike Carr's Reply Brief.*

Before addressing Carr's assignments of error, we need to rule on the State's objection and motion to strike Carr's reply brief in both cases. The State argues that Carr raised a new claim of ineffective assistance of counsel in his reply briefs that was not assigned or argued in Carr's initial briefs on appeal. Specifically, Carr assigns in his reply briefs that his trial counsel was ineffective in failing to investigate.

A reply brief cannot be used to raise new matters. *State v. Schnell*, 17 Neb. App. 211, 757 N.W.2d 732 (2008). The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's brief and errors may not be asserted for the first time in a reply brief. *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

We agree that Carr's reply brief in both cases raises a new ineffective assistance of counsel claim that was not raised in his initial briefs. Accordingly, we grant the State's motion to strike Carr's reply briefs and do not consider them in either case.

*Voluntariness of Pleas.*

In both cases Carr assigns that his no contest pleas were not knowingly, voluntarily, intelligently, and freely made because he was not informed of his right to counsel during the plea

- 4 -

hearing. He also contends his argument is supported by the fact that the court found him guilty of the charges to which he pleaded but did not find him "guilty beyond a reasonable doubt."

In order to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and knowingly, the court must inform the defendant concerning the nature of the charge, the right to assistance of counsel, the right to confront witnesses against the defendant, the right to a jury trial, and the privilege against self-incrimination. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The court must also examine the defendant and determine whether he or she understands the foregoing. *Id.* Lastly, the court must ensure the record establishes that there is a factual basis for the plea and that the defendant knew the range of penalties for the crime with which he or she is charged. *Id.*

Carr argues he was not advised of his right to assistance of counsel. The record shows that the court informed Carr of the nature of the charges, the right to confront witnesses, the right to a jury trial, the privilege against self-incrimination, and the range of penalties for the crimes charged. The State also provided a factual basis for the charges in both cases. The record does not show that the court informed Carr of the right to assistance of counsel. However, this failure does not necessarily render his pleas invalid. In *State v. Watkins*, 277 Neb. 428, 762 N.W.2d 589 (2009), the court held that the defendant's plea was valid despite the court's failure to inform him of the right to counsel because the defendant was accompanied by appointed counsel when he entered the plea, he told the court he had had enough time to discuss the plea agreement with his attorney and was satisfied with his attorney's efforts, and his attorney told the court that he had no reason to think that the defendant was not freely, intelligently, and voluntarily entering his plea.

In the present case, Carr was represented by counsel at the plea hearing. Further, Carr indicated he did not need more time to discuss the plea with counsel, he was satisfied with counsel's advice and representation, and he had a complete understanding of what it meant to enter a plea to the charges. His counsel also stated she believed Carr was entering his pleas freely, voluntarily, intelligently, and knowingly.

We conclude that Carr freely, intelligently, voluntarily, and understandingly entered his no contest pleas even if the court did not inform him of the right to counsel.

As to Carr's assertion that the district court failed to find him "guilty beyond a reasonable doubt," Carr points to no authority that supports such a requirement and makes no argument as to why such failure would support a finding that his pleas were not voluntary. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Blake,* 310 Neb. 769, 969 N.W.2d 399 (2022). Carr has failed to specifically argue the claim, and we do not consider it.

Carr's first assignment of error in both cases fails.

*Excessive Sentences.*

Carr next assigns that his sentences in both cases were excessive. In case No. A-25-485, Carr was convicted of attempted robbery, a Class IIA felony. Statutory sentencing guidelines for a Class IIA felony carry a maximum of 20 years' imprisonment, with no minimum. Neb. Rev. Stat. § 28-105 (Supp. 2025). Carr's sentence in this case of 18 to 20 years' imprisonment is within the statutory limits.

In case No. A-24-486, Carr was convicted of attempted possession of a firearm by a prohibited person, a Class II felony, and terroristic threats, a Class IIIA felony. The maximum term of imprisonment for a Class II felony is 50 years and the minimum is one year. § 28-105. A Class IIIA felony carries a maximum of 3 years' imprisonment, with no minimum. *Id.* Carr's sentence of 17 to 20 years' imprisonment for the Class II felony, and sentence of 3 to 3 years' imprisonment for the Class IIIA felony are within the statutory limits. Because all of Carr's sentences are within the statutory range, the question is whether the district court abused its discretion.

In both cases, Carr argues that his sentences are an abuse of discretion because his coperpetrator in the robberies in case No. A-24-485 received only a 2-year sentence of imprisonment. He also contends that the district court knew his coperpetrator was "white" and Carr is "black" and infers that this led to an unfair sentence.

Based on the PSI, Carr's coperpetrator in the robberies was convicted of aiding in the consummation of a felony, a Class IV felony, and received a sentence of 2 years' imprisonment. Carr's coperpetrator was convicted of a different crime and different level of felony than Carr. Carr was convicted of a Class IIA felony in relation to the robberies, as well as a Class II and Class IIIA felony in the other case that did not involve the coperpetrator. There is no abuse of discretion in Carr's sentences based on the sentence of his coperpetrator in the robberies. The issue in reviewing a sentence is not whether someone else in a different case received a lesser sentence, but whether the defendant in the subject case received an appropriate one. *State v. Albers*, 276 Neb. 942, 758 N.W.2d 411 (2008). The mere fact that a defendant's sentence differs from those which have been imposed on coperpetrators in the same court does not, in and of itself, make the defendant's sentence an abuse of discretion; each defendant's life, character, and previous conduct may be considered in determining the propriety of the sentence. *State v. Vance*, 240 Neb. 794, 484 N.W.2d 453 (1992).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

So long as the trial court's sentence is within statutorily prescribed limits, is supported by competent evidence, and is not based on irrelevant considerations, an appellate court cannot say that a trial court has abused its discretion. Such a sentence is not untenable, does not unfairly deprive a litigant of a substantial right, and does not deny a just result. *State v. Rivera*, 14 Neb. App. 590, 711 N.W.2d 573 (2006).

The record shows that before sentencing Carr in both cases, the district court reviewed the PSI, considered comments from counsel, and considered the factors required by law. It specifically noted Carr's criminal history, which started when he was a juvenile, and the violent nature of the current offenses. The court's comments at sentencing do not indicate that it considered any

inappropriate factors or ignored mitigating factors in determining the proper sentences. Thus, there was no abuse of discretion in the sentences imposed in either case.

However, the State contends there is plain error in the number of days given as credit for time served in case No. A-25-486. We agree. The district court gave Carr credit for 288 days served. However, during the sentencing hearing, it was noted that Carr was entitled to 244 days' credit for time served, which is consistent with the credit stated in the PSI. Carr's counsel argued Carr should receive an additional 4 days of credit and explained the 4 days came from the case that was dismissed pursuant to the plea agreement. The court clarified that counsel was arguing an additional 4 days should be applied to case No. A-25-486, which had 244 days' credit. Carr's counsel agreed and the State indicated it had no reason to dispute the additional 4 days. The court then stated, "So then that would have [case No. A-25-486] 288 days of jail credit."

The record is clear that Carr was entitled to 244 days' credit for time served, plus an additional 4 days that the State does not dispute, for a total of 248. The trial court's 288 days' credit was plain error.

We further note that the Nebraska Supreme Court has held that "when a court imposes multiple sentences contemporaneously, whether such sentences are ordered to be served consecutively or concurrently, all available credit for time served under [Neb. Rev. Stat.] § 83-1,106(1) [(Reissue 2024)] is applied just once, to the aggregate of all terms imposed." *State v. Nelson*, 33 Neb. App. 929, 29 N.W.3d 830 (2025). The district court applied a specific amount of days credit in each case, rather than to the aggregate of all the terms imposed. Accordingly, finding plain error, we modify the sentencing orders in both cases to provide that Carr is entitled to 303 days' credit for time served against the aggregate of all terms imposed in case No. A-25-485 and case No. A-25-486.

The State also suggests that there is plain error in the sentence imposed by the district court for the terroristic threats conviction. Carr was sentenced to 3 to 3 years' imprisonment on this charge, a Class IIIA felony. The State argues the sentence does not comply with Neb. Rev. Stat. § 29-2204(1) (Reissue 2016), which provides:

> Except when a term of life imprisonment is required by law, in imposing a sentence upon an offender for any class of felony other than a Class III, IIIA, or IV felony, the court shall fix the minimum and the maximum terms of the sentence to be served within the limits provided by law. The maximum term shall not be greater than the maximum limit provided by law, and: (a) The minimum term fixed by the court shall be any term of years less than the maximum term imposed by the court; or (b) The minimum term shall be the minimum limit provided by law.

The State contends that the maximum term imposed and the indeterminate nature of Carr's sentence are valid, but the minimum term that was imposed is erroneous because it is not less than the maximum term imposed, and the minimum set by statute for this offense is less than 3 years.

We find no plain error in the sentence. Section 29-2204(1) applies when "imposing a sentence upon an offender for any class of felony other than a Class III, IIIA, or IV felony." The terroristic threats charge was a Class IIIA felony. Accordingly, the statute is not applicable here.

*Ineffective Assistance of Counsel.*

In both cases, Carr assigns that his trial counsel was ineffective. Before we address his specific claims of ineffective assistance of counsel, we first set forth the relevant case law for these claims.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. See *id*.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Lorello*, 314 Neb. 385, 991 N.W.2d 11 (2023).

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*.

When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

In both cases Carr assigns his trial counsel was ineffective for failing to contest the factual basis and for failing to raise the excessiveness of his sentences when compared to the sentence of his coperpetrator. Regarding the factual basis, Carr argues that his trial counsel should have contested the statement that Carr was the one who punched the manager during the July 24, 2024, robbery prior to sentencing. He suggests that if the issue was raised earlier, his sentences would have been more lenient.

The State's factual basis indicated that Carr punched the manager in the right cheek during the robbery on July 24, 2024. At the sentencing hearing, Carr's counsel argued that the victim indicated he was struck by the white male (Ross), not Carr, and wanted the factual basis modified to reflect this. The court acknowledged the change and stated it would take it into consideration with respect to sentencing. Accordingly, because the court took the change into account when sentencing Carr, he cannot show that his counsel was deficient in failing to contest the factual basis sooner, nor can he show he was prejudiced. Accordingly, this ineffective assistance of counsel claim in both cases fails.

As to Carr's assignment that his counsel was ineffective in failing to argue his sentences were excessive when compared to the sentence of his coperpetrator, Carr fails to argue this assignment of error in his brief in either case. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). Because Carr has failed to argue this claim of ineffective assistance of counsel in either case, we do not address it.

In case No. A-25-486, Carr assigns that his trial counsel was ineffective "by not asking for new trial based on newly discovered evidence." Carr argues that his counsel was aware of an email that indicated the gun used in this case belonged to his girlfriend and would have refuted the charge of attempted possession of a firearm by a prohibited person. Even if such email existed, Carr's claim that his counsel should have filed a motion for new trial is refuted by the record. The record shows that a Ruger 9-mm gun was found in a safe located at the home of his girlfriend. The safe also included a wallet with Carr's driver's license and a Visa card in Carr's name. Further, Carr made admissions regarding the gun during phone calls while he was in jail, and his DNA was found on the gun's magazine and slide. Additionally, even if the gun was owned by another person, Carr was still in possession of it as a prohibited person.

Carr also claims his counsel should have filed a motion for new trial based on an affidavit from Rogers, the victim in this case, indicating he wrongly identified Carr as the perpetrator. Carr argues that if he had been aware of the acknowledgment before entering his plea, he would not have entered a plea and would have proceeded to trial.

The PSI includes a police report stating that Rogers signed an acknowledgment that he had identified the wrong person, and that Carr was not the perpetrator. However, the report further explains why Rogers recanted and that he reconfirmed that Carr was the person who assaulted him with the gun. All of these events occurred prior to Carr entering his pleas. Accordingly, there was no newly discovered evidence to support a motion for new trial.

In addition, there was other evidence to connect Carr to the assault on Rogers, specifically the DNA evidence from the Ruger 9-mm gun found in the safe and the gun parts left at the scene. The base of the magazine had DNA belonging to Carr. The baseplate and barrel of the gun had Rogers' DNA. The slide of the firearm had DNA from both Rogers and Carr. Carr assaulted Rogers by hitting him with the gun, so the fact that there was DNA from both on the gun is evidence that Carr was Rogers' perpetrator.

Carr cannot show there is a reasonable probability that he would have insisted on going to trial rather than pleading no contest had he known about Rogers' acknowledgment. Carr's final ineffective assistance of counsel claim in case No. A-24-486 fails.

CONCLUSION

We affirm Carr's convictions in case No. A-25-485 and case No. A-25-486. We modify the sentencing orders in both cases to provide that Carr is entitled to 303 days' credit for time served against the aggregate of all terms imposed in case No. A-25-485 and case No. A-25-486.

AFFIRMED AS MODIFIED.